## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LEILANI SULIT | ) | |
| | ) | |
| Plaintiff, | ) | **FILED: JULY 25, 2008** |
| | ) | **08CV4223** |
| v. | ) | **JUDGE MAROVICH** |
| | ) | Case No. **MAGISTRATE JUDGE BROWN** |
| FIRST CHICAGO MORTGAGE, | ) | **AEE** |
| an Illinois Corporation; | ) | |
| BANKUNITED CORP. FSB; | ) | |
| a Foreign Corporation; WILMETTE | ) | |
| TITLE SERVICES, INC., a/k/a | ) | |
| CAMBRIDGE TITLE; NANCY | ) | |
| LICCARDI; KHORRAM | ) | |
| CHAUDRY and RONY | ) | |
| KHEZERAN | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

NOW COMES the Plaintiff, LEILANI SULIT, ("Plaintiff") by and through her attorneys, Wiczer & Zelmar, LLC, Complaining of the Defendants, FIRST CHICAGO MORTGAGE, ("Defendant First Chicago"), BANKUNITED CORP., FSB ("Defendant BankUnited"), WILMETTE TITLE SERVICES, INC., a/k/a CAMBRIDGE TITLE, NANCY LICCARDI ("Defendant Liccardi"), KHORRAM CHAUDRY ("Defendant Chaudry"), and RONY KHEZERAN ("Defendant Khezeran"), alleges and states as follows:

### FACTS RELATED TO THE PARTIES

1.      The Plaintiff is a resident of the City of Chicago, County of Cook and State of Illinois.

2.      The Defendant First Chicago is an Illinois Corporation doing business in the State of Illinois, County of Cook and City of Chicago.

3.    The Defendant BankUnited is a Delaware Corporation, headquartered in Florida, doing business in the State of Illinois, County of Cook and City of Chicago.

4.    Defendant Cambridge Title is an Illinois Corporation doing business in the State of Illinois, County of Cook, City of Chicago.

5.    Upon information and belief, the Defendant Liccardi was a mortgage broker licensed to do business in Illinois and was employed by Defendant First Chicago at the time the mortgage loan that is the subject of this Complaint was made to Plaintiff.

6.    Upon information and belief, Defendant Chaudry was a loan originator employed by Defendant First Chicago at the time the mortgage loan that is the subject of this Complaint was made to Plaintiff.

7.    Upon information and belief, Defendant Khezeran is a mortgage broker licensed to do business in the State of Illinois and is the President of Defendant First Chicago.

8.    At all relevant times, Defendant BankUnited had a relationship with Defendant First Chicago where it allowed Defendant First Chicago to solicit mortgage loan applications on its behalf.

9.    At all relevant times, Defendant BankUnited had a relationship with Defendant Cambridge Title where it allowed Defendant Cambridge Title to close mortgage loans on its behalf, meaning that Defendant Cambridge Title was provided with instructions from Defendant Cambridge BankUnited as to the documentation to be collected, signed, or distributed at each real estate closing and Defendant BankUnited would provide defendant Cambridge Title with funds to distribute according to Defendant BankUnited's instructions.

10.    At all relevant times, Defendant Cambridge Title acted as Defendant BankUnited's agent for conducting the closing on the mortgage loan that is the subject of this Complaint.

2

11.     Plaintiff hired First Chicago, Liccardi, Chaudry and Khezeran (collectively "Defendant mortgage brokers") to be her mortgage brokers to arrange a mortgage loan, and as such Defendant mortgage brokers were her agents and owed the Plaintiff a fiduciary duty of full disclosure and loyalty.

## JURISDICTION AND VENUE

12.     This court has subject matter jurisdiction pursuant to 28 U.S.C § 1331, pursuant to the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*; the Real Estate Settlement Procedures Act 12 U.S.C. §2601 *et seq.*; and the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1357, over Illinois law.

13.     Venue is proper as the Plaintiff resides in and Defendant does business and/or has places of business in Cook County, Illinois.  Further, the wrongful conduct occurred in, and the subject matter real property, specifically, 3415 Odell Avenue, Chicago, Illinois, (hereinafter "subject property"), is located within the district and division of this Court.

## FACTS RELATED TO THE LOAN TERMS

14.     At all times relevant hereto, Plaintiff had a substantial income and an excellent credit score.

15.     At all times relevant hereto, Plaintiff owned the subject property which secured the mortgage complained of in this Complaint, and which Plaintiff was seeking to refinance.

16.     In or about August / September of 2006, Defendant Chaudry, as an agent of Defendant First Chicago, solicited Plaintiff's business and promised he would secure, arrange and process an economically advantageous mortgage loan for Plaintiff.

17.     Plaintiff told Defendant Chaudry that she wanted the lowest interest rate for which she could qualify and that she would not take a loan that included any prepayment penalties.

18.     Defendant mortgage brokers represented to Plaintiff that they would find her an "excellent deal". Specifically, Defendant Chaudry represented to Plaintiff that he was the best mortgage broker in the business and that "the others are monkeys".

19.     Defendant First Chicago, under the direction of Defendant Khezeran, originated a loan to Plaintiff to be secured by a new mortgage to repay her prior mortgage loan. Defendant mortgage brokers, as agents of First Chicago, originated and processed Plaintiff's mortgage loan from Defendant BankUnited.

20.     Defendant mortgage brokers originated and BankUnited extended an adjustable rate mortgage loan with an initial interest rate of 8% interest per annum. After 12 months the interest rate became subject to adjustment, with the potential for the interest rate to increase by as much as 7.5% at that and at each subsequent adjustment.  The lifetime interest rate cap on the loan was 10.950%. (See Adjustable Rate Note attached hereto as Exhibit "A," ¶ 2(A-C)).

21.     The mortgage loan originated by Defendant mortgage brokers and extended by BankUnited was economically disadvantageous to Plaintiff, because Plaintiff was actually qualified to receive a much lower interest rate and more favorable loan terms, given her level of income and excellent credit score.

22.     The mortgage loan originated by Defendant mortgage brokers and extended by BankUnited was disadvantageous to Plaintiff, compared to the interest rates on comparable residential mortgage loans for similarly situated borrowers in the same market, during the relevant time period.

23.     Even though Plaintiff was qualified for a low-interest, fixed-rate mortgage with no prepayment penalties and other economically advantageous loan terms, Defendant mortgage

brokers intentionally solicited loans for Plaintiff that carried high interest, increasing adjustable rates and prepayment penalty fees.

## FACTS RELATING TO THE LOAN APPLICATION, CLOSING DOCUMENTS AND INFLATED FEES CHARGED BY DEFENDANTS

24.     During the application process and prior to the closing, Plaintiff did not receive any documents that disclosed the terms of her loan, as is required by state and federal law.

25.     Defendant mortgage brokers failed to provide Plaintiff with Preliminary Disclosures and/or a Good Faith Estimate, as is required by statute.

26.     Defendant mortgage brokers failed to disclose that they would receive significant and excessive financial benefit at Plaintiff's expense; namely through a "yield-spread premium" ("YSP").

27.     Defendants actively concealed from Plaintiff the fact that Defendant BankUnited would charge Plaintiff a prepayment penalty of as much as six months interest if she refinanced or otherwise prepaid her loan within three years of signing the Promissory Note.

28.     In fact, Defendant BankUnited, through its agent First Chicago, provided Plaintiff with a promissory note that expressly states, "I may make a full Prepayment or partial Prepayments without paying a Prepayment charge" and Plaintiff has initialed this provision in the note. (See Ex. A, ¶ 5).

29.     In spite of Plaintiff's repeated requests, Defendant mortgage brokers refused to provide her with any documents regarding her loan.

30.     Defendant Chaudry persuaded Plaintiff that it was not necessary for her to attend the closing at Defendant Cambridge Title. Further, Defendant Chaudry did not even tell her until after the fact that the closing had indeed taken place.

31.     At an undetermined time after the closing, upon information and belief, Defendant BankUnited "sold" Plaintiff's loan to GMAC Mortgage LLC. (See sample monthly statement, attached hereto as Exhibit. "B").

32.     In or about January of 2008, Plaintiff learned from GMAC that her loan included a three year prepayment penalty period, and that the penalty was six months interest or approximately $18,000.00. (See email correspondence attached hereto as Exhibit "C").

33.     Attached to the email correspondence from GMAC, as referenced in the preceding paragraph 32, was a Promissory Note for Plaintiff's loan. (See copy of Promissory Note attached hereto as "Group Exhibit D"). The Promissory Note provided by GMAC in January 2008 (Exhibit D) is nearly identical to the Note provided to Plaintiff before the closing, and which is attached hereto as Exhibit A. The only difference between the two notes is that the Promissory Note sent to Plaintiff by GMAC in 2008 contains an "addendum" or rider, which provides for a prepayment penalty. The signature of Plaintiff's name on this rider is forged. (See Promissory Note Group Exhibit "D," at pp. D 5-6).

34.     Plaintiff promptly filed complaints concerning the irregularities and the forgery. She complained to the Defendants and to the Illinois Department of Financial and Professional Regulation ("IDFPR").

35.     In Response to Plaintiff's complaint, IDFPR launched an investigation. (See IDFPR Letter, attached hereto as Exhibit "E").

36.     In Response to IDFPR's investigation, Defendant mortgage brokers produced documents that Plaintiff had never seen before. Many of the documents produced bear obvious forgeries of Plaintiff's signature. (See First Chicago Documents attached hereto as Group Exhibit "F").

6

37.    Among the forged documents is a purported "prepayment penalty disclosure" to the promissory note which negates paragraph five of the Promissory Note, (Exhibit A) and imposes a Prepayment charge of six months interest in advance. However, the "prepayment penalty disclosure" was never provided to or otherwise disclosed to Plaintiff. Plaintiff's signature on this document is a forgery. Whoever signed Plaintiff's name even spelled her first name incorrectly. (See Exhibit F-14). This document was intentionally withheld from Plaintiff.

38.    Also among the forged documents is a Truth In lending Disclosure Statement. This document was never shown or otherwise disclosed to Plaintiff and the signature on this document is likewise a forgery. (See Exhibit F 2-3). This document was intentionally withheld from Plaintiff.

39.    Also among the forged documents is a Mortgage Loan Origination Agreement (Exhibit F-4) and a Uniform Residential Loan Application. (Exhibit F-7). These documents were never shown or otherwise disclosed to Plaintiff and the signatures of Plaintiff's name on these documents are also forgeries.  (See F 4-14). These documents were intentionally withheld from Plaintiff.

40.    Also among the withheld documents is a HUD-1 Settlement Statement. (See HUD-1 Settlement Statement attached as Ex. "G"). Line 810 of the HUD-1 Settlement contains the following statement: "YSP paid by BankUnited FSB … $14,840.00 POC to First Chicago." (Exhibit G-2).

41.    "YSP" is an acronym for "yield-spread premium" and "POC" is an acronym for "paid outside of closing". This represents a $14,840.00 "premium" paid by Defendant BankUnited to Defendant First Chicago and its agents for Defendant mortgage brokers bringing to Defendant BankUnited a borrower who could be induced and was in fact induced into signing a high-cost loan with unfavorable, one-sided penalties that were unknown to her.

42.     This "premium" paid by Defendant BankUnited to Defendant mortgage brokers was passed on to ultimately be paid by Plaintiff, through the inflated interest rate on her BankUnited loan and/or the prepayment penalty.

43.     This "premium" represents secret profit to the Defendant mortgage brokers that was never disclosed or otherwise explained to Plaintiff.

44.     In addition, the HUD-1 Settlement (Exhibit G) included the following additional fees collected by Defendant First Chicago which are duplicative of any origination fees, in violation of state and federal statutes:

> Line 803. . . . Appraisal Fee:          225.00
>
> Line 809. . . . Processing Fee:         720.00 (See Ex. F).

45.     Plaintiff has been unable to mitigate her damages by re-financing out of the unfavorable BankUnited loan and into a loan with more favorable terms, due to the prepayment penalty she would have incurred in a sum in excess of $18,000.00 (See Exhibit C).

## COUNT I – COMPLAINT FOR BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS LICCARDI, CHAUDRY, KHEZERAN AND FIRST CHICAGO MORTGAGE

46.     Plaintiff restates and realleges the preceding paragraphs 1 through 45 as if set forth as paragraphs 1 through 46 of this Count I.

47.     A mortgage broker is an agent procured by the borrower to obtain a loan.

48.     Defendants First Chicago, Liccardi, Chaudry and Khezeran were enlisted as mortgage brokers to procure a mortgage loan for Plaintiff. As such, each was her agent for the purpose of obtaining a mortgage.

49.     Each mortgage broker, as Plaintiff's agent, owed to her as principal, a statutory, contractual and fiduciary duty to act honestly and loyally in Plaintiff's best interest.

50.     Each mortgage broker, as Plaintiff's agent, owed her a fiduciary duty of the highest degree of good faith and was charged with the duty of complete disclosure of all material facts which might affect the decisions she made concerning the mortgage loan at issue.

51.     The requirement of a fiduciary duty forbids dishonest conduct on the part of the mortgage brokers. A fiduciary is prohibited from acting fraudulently or adversely to the principal's interest.

52.     Defendant First Chicago employed Defendant Liccardi, and therefore First Chicago is responsible for unlawful acts of Liccardi and Defendant Liccardi is also liable for her own unlawful acts.

53.     Defendant First Chicago employed Defendant Chaudry and therefore First Chicago is responsible for Chaudry's unlawful acts and Defendant Chaudry is also liable for his own unlawful acts.

54.     Defendant First Chicago employed Defendant Khezeran and therefore First Chicago is responsible for Khezeran's unlawful acts and Defendant Khezeran is also liable for his own unlawful acts.

55.     As alleged in paragraphs 36-44, Defendant mortgage brokers failed to disclose and/or actively and fraudulently concealed material facts from Plaintiff. Those material facts include but are not limited to: (1) that Plaintiff was being steered into taking a loan with economically disadvantageous terms; (2) that the Defendants named in this Count I were receiving undisclosed secret compensation in the form of a "YSP," for inducing Plaintiff to accept an economically disadvantageous loan; (3) that sham processing charges were being charged to the Plaintiff in addition to the loan origination fee she agreed to pay; and (4) that there was a prepayment penalty when Plaintiff was told there was none.

56.     In the furtherance of the fraudulent scheme, Defendant mortgage brokers forged Plaintiff's signature on various binding loan documents. (See, e.g. Group Exhibit F).

57.     Defendant mortgage brokers favored their own interests over Plaintiff's interests by inducing Plaintiff to unknowingly accept a disadvantageous mortgage so that they could secretly profit from the YSP and other charges, to the detriment of Plaintiff.

58.     Defendant mortgage brokers actions as set forth above were undertaken intentionally or with reckless indifference to Plaintiff's rights and were secretive, malicious, calculating and were designed to obtain for themselves secret profit at Plaintiff's expense.

59.     The conduct of the Defendants mortgage brokers was the actual and proximate cause of damages to Plaintiff, including but not limited to, emotional distress, needless expenditure of money for inflated closing costs, fees, inflated mortgage interest payments, and liability for a prepayment penalty.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendants First Chicago, Liccardi, Chaudry and Khezeran, jointly and severally, $____ in actual damages and at least $250,000.00 in punitive damages, plus costs and attorney fees to be determined.

## COUNT II – BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT BANKUNITED

60.     Plaintiff restates and realleges the preceding paragraphs 1 through 59 as if set forth as paragraphs 1 through 60 of this Count II.

61.     Defendant BankUnited permitted Defendant mortgage brokers to solicit mortgage applications on its behalf.

62.    Defendant BankUnited had knowledge of or reasonably should have known of Defendant mortgage brokers' fraudulent practices.

63.    Defendant BankUnited was on actual notice or should have been on notice of irregularities at the closing of the mortgage loan, because it was represented at the closing by its agent, Defendant Cambridge Title, and Plaintiff did not attend the closing.

64.    Defendant BankUnited was on notice of Defendant mortgage brokers' breach of fiduciary duty because Defendant BankUnited induced the breach by letting it be known that it would participate in the payment of the YSP to Defendant mortgage brokers.

65.    Defendant BankUnited was on notice of the breach of fiduciary duty by Defendant mortgage brokers, because it knew or reasonably should have known that given the Plaintiff's credit score, employment information and other financial information as set forth on the loan application, Plaintiff could have reasonably qualified for a more economically advantageous mortgage.

66.    The actions of Defendant BankUnited were undertaken intentionally and/or with reckless indifference to the rights of the Plaintiff and the fiduciary duty of the Defendant mortgage brokers to the Plaintiff.  Defendant BankUnited enabled and participated in secretive, malicious, calculating and illegal conduct toward the Plaintiff.

67.    Defendant BankUnited's conduct was the actual and proximate cause of damage to the Plaintiff, including but not limited to emotional distress, needless expenditure of money for inflated closing costs, fees, inflated mortgage interest payments, and liability for a prepayment penalty.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendant BankUnited for $_____  in actual damages and at least $250,000.00 in punitive damages, plus costs and attorney fees to be

determined, plus a declaration that the mortgage loan is rescinded and that the Plaintiff is not liable for the mortgage.

## COUNT III – COMPLAINT FOR FRAUD AGAINST DEFENDANTS RICCARDI, CHAUDRY, KHEZERAN AND FIRST CHICAGO MORTGAGE

68.     Plaintiff restates and realleges the preceding paragraphs 1 through 67 as if set forth as paragraphs 1 through 68 of this Count III.

69.     Defendant mortgage brokers originated a residential real estate loan for Plaintiff and made a material statement of fact to Plaintiff that they were acting in her best interest.

70.     Defendant mortgage brokers made a material statement of fact to Plaintiff that the mortgage loan they were originating for from Defendant BankUnited was the best deal she could get given her credit rating.

71.     Defendant mortgage brokers made a material statement of fact when they represented to Plaintiff that there was no prepayment penalty.

72.     Defendant mortgage brokers made a material statement of fact when they represented to Plaintiff that her presence was not necessary at the closing of her BankUnited mortgage loan.

73.     Defendant mortgage brokers concealed material facts from Plaintiff concerning the extraneous and inflated fees attached to her loan, including the "YSP".

74.     Defendant mortgage brokers made the material statements and omissions of fact in paragraphs 69-73 when they knew or should have known that those material statements or omission were false and fraudulent.

75.     Defendant mortgage brokers made the material statements or omissions of fact in paragraphs 69-73 for the purpose of inducing Plaintiff to enter into the mortgage note complained of herein.

76.     Defendant mortgage brokers intended Plaintiff to rely upon their false material statements or omission of facts.

77.     Plaintiff did rely upon the statements of Defendant mortgage brokers, and entered into the mortgage and promissory note. (See Mortgage attached hereto as Ex. "H").

78.     In the absence of the fraudulent statements made by Defendant mortgage brokers as outlined in paragraphs 36-44, 55 and 69-73 herein, Plaintiff would not have entered into the mortgage and note with Defendant BankUnited on the terms offered.

79.     Because Plaintiff relied upon the statements made by Defendant mortgage brokers, Plaintiff was damaged in that she has paid an excessive and unfair rate of interest, she incurred egregiously inflated costs and fees upon the closing of the loan, including the previously undisclosed YSP, she cannot mitigate her damages because of the prepayment penalty, she has incurred attorney fees and court costs and has suffered emotional distress.

WHEREFORE, Plaintiff Leilani Sulit, for the reasons set forth above, prays that this Honorable enter in her favor and against Defendants First Chicago, Liccardi, Chaudry and Khezeran, jointly and severally, an Order:

a.     That the Defendant mortgage brokers be required to restore to Plaintiff all money paid by her or on her behalf on account of the mortgage and note;

b.     That the Court declare that Plaintiff has no liability under the mortgage and note;

c.     That Plaintiff be awarded all of her costs of this suit, including court costs and reasonable attorneys' fees; and

d.     That Plaintiff be granted such other and further relief as the Court deem just and proper.

## COUNT IV – COMPLAINT FOR FRAUD AGAINST BANKUNITED AND CAMBRIDGE TITLE

80.    Plaintiff restates and realleges the preceding paragraphs 1 through 79 as if set forth as paragraphs 1-80 of this Count IV.

81.    Defendant BankUnited, through its agent First Chicago, provided Plaintiff with a promissory note that expressly states, "I may make a full Prepayment or partial Prepayments without paying a Prepayment charge" and Plaintiff has initialed this provision in the note. (See Exhibit A, ¶ 5).

82.    The statement in the Promissory Note that no prepayment penalty existed is a statement of material fact, which Defendant BankUnited knew, or should have known, was false.

83.    The statement in the Promissory Note that no prepayment penalty existed was made with the intent to induce Plaintiff to rely on the fact that she would not incur a prepayment penalty, should she accept the loan.

84.    Plaintiff relied on the statement in the BankUnited Promissory Note that no prepayment penalty existed, when Plaintiff accepted the mortgage loan and its terms, from BankUnited.

85.    Additionally, Defendant BankUnited directed and controlled Cambridge Title's activities as agent for BankUnited. (See, e.g. Ex. D, p.1).

86.    Cambridge Title knew or should have known of the fraud committed by Defendant mortgage brokers, because there were irregularities at the closing supervised by Cambridge Title, including the absence of the Plaintiff from the closing.

87.    Defendant BankUnited knew or should have known of the fraud committed by Defendant mortgage brokers because there were irregularities at the closing supervised by

14

Cambridge Title, which Defendant BankUnited designated as its agent for the purpose of closing Plaintiff's mortgage loan.

88.     Defendant BankUnited and Cambridge Title, by their material statements and/or conduct encouraged fraud and/or intentionally turned a blind eye to the fraudulent conduct of Defendant mortgage brokers.

89.     Plaintiff's reliance on Defendant BankUnited and Cambridge Title was the actual and proximate cause of damages to Plaintiff, including but not limited to emotional distress, inflated costs and liability for a prepayment penalty.

WHEREFORE, Plaintiff Leilani Sulit, for the reasons set forth above, prays that this Honorable enter in her favor and against Defendants BankUnited an Order:

a.     That the mortgage note should be rescinded, canceled, set, aside and declared null and void as against the Plaintiff, her heirs and assigns;

b.     That Defendant BankUnited be ordered and required to deliver up the note and mortgage for cancellation;

c.     That the Court declare that Plaintiff has no liability under the mortgage and note;

e.     That Plaintiff be awarded all of her costs of this suit, including court costs and reasonable attorneys' fees; and

f.     That Plaintiff be granted such other and further relief as the Court deem just and proper.

### COUNT V– COMPLAINT FOR VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AGAINST DEFENDANTS LICCARDI, CHAUDRY, KHEZERAN AND FIRST CHICAGO MORTGAGE

89.     Plaintiff restates and realleges paragraphs 1 through 88 as if fully set forth as paragraphs 1-89 of this Count V.

90.     As set forth above, Defendant mortgage brokers each made deceptive statements and/or committed deceptive acts in connection with the transaction complained of in this Complaint, which occurred in the course of trade or commerce.

91.     Defendant mortgage brokers conduct was intended to induce Plaintiff to accept an economically disadvantageous loan so that they could secretly collect excess profits, and they intended Plaintiff to rely upon each misrepresentation or deceptive act,

92.     Plaintiff did in fact rely upon Defendant mortgage brokers' misrepresentations.

93.     Each deception by Defendant mortgage brokers was the actual and proximate cause of damage to the Plaintiff.

94.     The deceitful actions of the Defendant mortgage brokers described herein constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq*.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendants First Chicago, Liccardi, Chaudry and Khezeran, jointly and severally, $ _____ in actual damages and punitive damages of at least $250,000.00, plus costs and reasonable attorney fees to be determined and such other relief as this Honorable Court deems just and proper.

### COUNT VI – COMPLAINT FOR VIOLATIONS OF RESPA  ANDTHE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AGAINST BANKUNITED

95.     Plaintiff restates and realleges paragraphs 1 through 94 as if fully set forth as paragraphs 1-95 of this Count VI.

96.     Defendant mortgage brokers referred Plaintiff's business to Defendant BankUnited even though Plaintiff could have qualified for a more economically favorable loan from another lender.

97.     As set forth in paragraphs 40-43 and 64, there was an agreement between Defendant mortgage brokers and Defendant BankUnited for Defendant mortgage brokers to refer mortgage loan business to Defendant BankUnited.

98.     Defendant BankUnited transferred monies to Defendant mortgage brokers based on the aforementioned mortgage loan referral agreement. (See Exhibit G, line 108).

99.     Defendant BankUnited failed to ensure that Plaintiff was provided preliminary disclosure, namely, a Good Faith Estimate, as required by the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, et seq.

100.    Defendant BankUnited paid a previously undisclosed YSP to Defendant mortgage brokers in the amount of $14,840.00, in addition to sham charges reflected on the HUD-1 Settlement Statement and outlined in paragraph 44 of this Complaint. (Exhibit G).

101.    Because BankUnited failed its statutory disclosure obligation by failing to provide Plaintiff with a Good Faith Estimate, Plaintiff was unaware of the Defendant mortgage brokers' inflated and secret profit, at her expense.

102.    Defendant mortgage brokers received compensation from Defendant BankUnited in excess of the customary and reasonable compensation for a mortgage broker or loan originator representing a residential borrower such as Plaintiff.

103.    These acts constitute a violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, et seq..

17

104.    Because these acts violate RESPA, they also violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq*.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendant BankUnited, for actual damages in the amount of $_____ and punitive damages of at least $250,000.00, plus costs and reasonable attorney fees to be determined and such other relief as this Honorable Court deems just and proper.

## COUNT VII – COMPLAINT FOR VIOLATIONS OF RESPA AND THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AGAINST AGAINST DEFENDANTS LICCARDI, CHAUDRY, KHEZERAN AND FIRST CHICAGO MORTGAGE

105.    Plaintiff restates and realleges paragraphs 1 through 104 as if fully set forth as paragraphs 1-105 of this Count VII.

106.    Defendant mortgage brokers referred Plaintiff's business to Defendant BankUnited even though Defendant mortgage brokers could have obtained for Plaintiff a more favorable loan from another lender.

107.    There was an agreement between Defendant mortgage brokers and Defendant BankUnited for Defendant mortgage brokers to refer mortgage loan business to Defendant BankUnited. (Exhibit G).

108.    Defendant mortgage brokers charged or accepted monies from Defendant BankUnited, based on the aforementioned mortgage loan referral agreement. (Exhibit G).

109.    Specifically, Defendant mortgage brokers charged or accepted from Defendant BankUnited a previously undisclosed YSP in the amount of $14,840.00, in addition to bogus fees charged to Plaintiff, as reflected on the HUD-1 Settlement. (See Ex. G. line 108).

110.    Defendant mortgage brokers received compensation from Defendant BankUnited in excess of customary and reasonable compensation for a mortgage broker or loan originator representing a residential borrower such as Plaintiff.

111.    These acts constitute of violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, et seq.

112.    These acts, as a violation of RESPA, also constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, et seq.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendant mortgage brokers, for actual damages in the amount of $____ and punitive damages of at least $250,000.00, plus costs and reasonable attorney fees to be determined and such other relief as this Honorable Court deems just and proper.

## COUNT VIII - COMPLAINT FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY DEFENDANT MORTGAGE BROKERS AND BANKUNITED

113.    Plaintiff restates and realleges paragraphs 1 through 112 as if fully set forth as paragraphs 1-113 of this Count VIII.

114.    As set forth above, Defendant mortgage brokers were induced by a "YSP" and other compensation to steer Plaintiff's mortgage loan business to Defendant BankUnited, even though Defendant BankUnited did not offer Plaintiff a loan that was advantageous to her.

115.    The Truth in Lending Act ("TILA") requires certain disclosures including:

a.    Clear, conspicuous and accurate disclosures of loan terms as set forth in 12 C.F.R. 226.18.
b.    Every loan must be properly disclosed as part of the "amount financed" or "finance charge." 12 C.F.R. 22618(b), 12 C.F.R. 22618(d).
c.    The "finance charge" includes money payable directly or indirectly to the creditor as an incident to or condition of the extension of the credit. 12 C.F.R. 226.4.

116.    Defendant mortgage brokers failed to disclose to Plaintiff all material facts pertaining to the loan terms, finance charges or other conditions to the extension of credit, as required by TILA.

117.    Defendant BankUnited failed to disclose to Plaintiff all material facts pertaining to the loan terms, finance charges or other conditions to the extension of credit, as required by TILA.

118.    Alternatively, if any disclosures were made to Plaintiff, the disclosures that were made to Plaintiff were intentionally ambiguous and inaccurate.

119.    The amount of the YSP profit to the Defendant mortgage brokers was intentionally concealed from Plaintiff.

120    The documents given to Plaintiff after the closing intentionally omitted the "rider" bearing a forgery of Plaintiff's signature, which provided a significant and excessive prepayment penalty should Plaintiff refinance or repay the mortgage note prior to its maturity date.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendant mortgage brokers and defendant BankUnited actual damages in the amount of $____ and punitive damages of at least $250,000.00, plus costs and reasonable attorney fees to be determined and such other relief as this Honorable Court deems just and proper.

### COUNT IX – COMPLAINT FOR VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND BUSINESS PRACTICES ACT DUE TO VIOLATIONS OF OTHER CONSUMER PROTECTION STATUTES AGAINST LICCARDI, CHAUDRY, KHEZERAN, CHICAGO FIRST MORTGAGE AND BANKUNITED

121.    Plaintiff restates and realleges paragraphs 1 through 120 as if fully set forth as paragraphs 1-121 of this Count IX.

122.    As set forth above, all Defendants knowingly violated consumer protection statutes

Including, but not limited to, RESPA and TILA.

123. A violation of a consumer protection statute is a *per se* violation of the Illinois Consumer Fraud and Business Practices Act, 815 ILCS § 505/2Z.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendant mortgage brokers and defendant BankUnited actual damages in the amount of $ _____ and punitive damages of at least $250,000.00, plus costs and reasonable attorney fees to be determined and such other relief as this Honorable Court deems just and proper.

## COUNT X – COMPLAINT FOR CIVIL CONSPIRACY AGAINST LICCARDI, CHAUDRY, KHEZERAN, CHICAGO FIRST MORTGAGE AND BANKUNITED

124. Plaintiff restates and realleges paragraphs 1 through 123 as if fully set forth as paragraphs 1 through 124 of this Count X.

125. There was an agreement between Defendants to persuade Plaintiff to become liable on a mortgage loan that was violative of statutes and was illegal in that Defendants misled Plaintiff as to the nature and type of loan for which she qualified.

126. The illegal acts done by the Defendant mortgage brokers and Defendant BankUnited were done as part of a common scheme, and in furtherance of that scheme, to provide consumers including Plaintiff with substandard and disadvantageous loans in the interest of providing excessive and secret monetary benefits to Defendants at Plaintiff's expense.

127. As set forth in Counts I-IX above, Defendant mortgage brokers and Defendant BankUnited used illegal means including, but not limited to, fraud, forgery and violations of RESPA, TILA and the Illinois Consumer Fraud and Deceptive Practices ACT to accomplish the common scheme.

21

128.    The illegal acts done by the Defendant mortgage brokers and Defendant BankUnited were done in furtherance of the common scheme, to provide Plaintiff with a disadvantageous mortgage, to forge her signature and to withhold documents and information from her.

129.    The acts of the Defendants in furtherance of their common scheme were willful, wanton, malicious, and were the actual and proximate cause of Plaintiff's injuries, including economic loss and emotional distress due to the overt illegal acts of the Defendants.

WHEREFORE, for the reasons set forth above, Plaintiff Leilani Sulit prays that this Honorable Court award in her favor and against Defendant mortgage brokers and Defendant BankUnited actual damages in the amount of $ ___ and punitive damages of at least $250,000.00, plus costs and reasonable attorney fees to be determined and such other relief as this Honorable Court deems just and proper.

Respectfully Submitted,

Leilani Sulit


_____/s/Elliot S. Wiczer_____
By One of Her Attorneys


Bernard Wiczer
Tressa A. Pankovits
WICZER & ZELMAR, LLC
500 Skokie Boulevard, Suite 350
Northbrook, IL  60062
(847) 849-4800
Attorney No. 37886

### VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true, correct, and complete, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.


_____
Leilani Sulit


Subscribed and Sworn to
Before me this ____ day of
July, 2008.


_____
Notary Public

# BankUnited

## Adjustable Rate Note
### (1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate)
### (1 Month MTA ARM)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND MY PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THIS NOTE. THE PRINCIPAL BALANCE OF THIS NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.

| October 17, 2006 | NORTHFIELD | Illinois |
|---|---|---|
| [Date] | [City] | [State] |

3415 NORTH ODELL AVENUE
CHICAGO, IL 60634

[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 424,000.00 plus any amounts added in accordance with Section 3(E) of this Note (this amount is collectively called "Principal"), plus interest, to the order of Lender. Lender is     BankUnited, FSB

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2.    INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          8.0000          %. The interest rate I will pay will change as provided in this Section 2.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.
**(B) Interest Change Dates**
The interest rate I will pay may change on the first day of          December 2006          , and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".
**(C) Interest Rate Limits**
My interest rate will never be greater than          10.9500          %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.
**(D) Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rate (H.15)." The Twelve-onth Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."
If the Index, or any substitute Index, is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.
**(E) Calculation of Interest Rate Changes**
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding Three and 2900/10000          percentage points (     3.2900     %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.
In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

**3.    PAYMENTS**
**(A) Time and Place of Payments**
I will make my monthly payments on the first day of every month, beginning on   December 2006   . I will make a payment every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   November 1, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change



EXHIBIT

A-1

I will make monthly payments at 7815 NW 148 ST., MIAMI LAKES, FL 33016

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payment**

My initial monthly payment will be in the amount of U.S. $ 1,403.05 . My initial monthly payment was calculated using a rate of 1.2000 %, the original Principal, and the Maturity Date. This rate is lower than the initial interest rate stated in Section 2(A) above.

The amount of my initial monthly payment will change as provided in this Section 3.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on December 1, 2007 and on that same day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change as provided under Section 3(F) below.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my payments are changed earlier as provided in Section 3(F) below.

**(D) Calculation of Monthly Payment Changes; Limitations**

On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date. However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date. The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

**(E) Changes in My Unpaid Principal**

My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note. In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time. For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time. For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 115% limitation on a monthly payment due date, I will begin paying a new monthly payment on that due date, and will continue to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation. The new monthly payment will be the amount that would be sufficient to repay my then unpaid Principal, together with interest at the rate in effect during the month prior to the payment due date, in full in substantially equal monthly installments through the Maturity Date. The new monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

**(G) Required Full Monthly Payment**

On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes.

My partial Prepayment may reduce the amount of my monthly payments after the first Interest Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase or other factors.

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate --
Monthly Rate Change

**EXHIBIT**

A-2

6.    **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charges for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of        15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of this
charge will be      5.0000      % of such monthly payment due. I will pay this late charge promptly
but only once on each late payment.
    **(B) Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C) Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to me.
    **(D) No Waiver By Note Holder**
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
    **(E) Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

8.    **GIVING OF NOTICES**
    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
    Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    **WAIVERS**
    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    **UNIFORM SECURED NOTE**
    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

    **"Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that

MFCD5083
Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate –
Monthly Rate Change
                                                    Page 3 of 4
000506580-0

Initials: _____

**EXHIBIT**

A-3

Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
LEILANI I. SULIT                    -Borrower                                              -Borrower


_____ (Seal)    _____ (Seal)
                    -Borrower                                              -Borrower


_____ (Seal)    _____ (Seal)
                    -Borrower                                              -Borrower


[Sign Original Only]

MFCD5083                                    000506580-0

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change
Page 4 of 4                                    Initials: _____

EXHIBIT

A—4

# **BankUnited**
## Adjustable Rate Rider
### (1 Year MTA Index – Initial Discounted Monthly Payment –
### Payment Caps and Maximum Rate)
### (1 Month MTA ARM)

THIS ADJUSTABLE RATE RIDER is made this **17th** day of **October 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note, as modified or amended (the "Note") to **BankUnited, FSB**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**3415 NORTH ODELL AVENUE
CHICAGO, IL 60634**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND THE PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THE NOTE. THE PRINCIPAL BALANCE OF THE NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**"2.    INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.0000** %. The interest rate I will pay will change as provided in this Section 2.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.
**(B) Interest Change Dates**
The interest rate I will pay may change on the first day of **December 2006** and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".
**(C) Interest Rate Limits**
My interest rate will never be greater than **10.9500** %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.
**(D) Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rates (H.15)." The Twelve-onth Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."
If the Index, or any substitute Index, is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.
**(E) Calculation of Interest Rate Changes**
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **Three and 2900/10000** percentage points ( **3.2900** %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.
In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 1 of 3                Initials: _____

MFCD5084                                              000506580-0

EXHIBIT

A–5

tabbies®

**(A) Time and Place of Payments**

I will make my monthly payments on the first day of every month, beginning on **December 2006**. I will make a payment every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **November 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make monthly payments at **7815 NW 148 ST., MIAMI LAKES, FL 33016**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payment**

My initial monthly payment will be in the amount of U.S. $ **1,403.05** . My initial monthly payment was calculated using a rate of **1.2000** %, the original Principal, and the Maturity Date. This rate is lower than the initial interest rate stated in Section 2(A) above.

The amount of my initial monthly payment will change as provided in this Section 3.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on **December 1, 2007** and on that same day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change as provided under Section 3(F) below.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my monthly payments are changed earlier as provided in Section 3(F) below.

**(D) Calculation of Monthly Payment Changes; Limitations**

On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date. However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date. The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

**(E) Changes in My Unpaid Principal**

My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note. In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time. For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time. For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 115% limitation on a monthly payment due date, I will begin paying a new monthly payment on that due date, and will continue to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation. The new monthly payment will be the amount that would be sufficient to repay my then unpaid Principal, together with interest at the rate in effect during the month prior to the payment due date, in full in substantially equal monthly installments through the Maturity Date. The new monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

**(G) Required Full Monthly Payment**

On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice."

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read, in its entirety, as follows:

**"Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

MFCD5084
Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

000506580-0

Initials: _____

**EXHIBIT**

**A-6**

tabbies®

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)       _____ (Seal)
LEILANI I. SULIT                        -Borrower                                            -Borrower

_____ (Seal)       _____ (Seal)
                                        -Borrower                                            -Borrower

_____ (Seal)       _____ (Seal)
                                        -Borrower                                            -Borrower

[Sign Original Only]

MFCD5084                                                                        000506580-0

Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 3 of 3                                    Initials: _____

**EXHIBIT**

A-7

tabbies

## GMAC Mortgage

| CUSTOMER INFORMATION | PROPERTY ADDRESS |
|---|---|
| Name: LEILANI I SULIT | 3415 NORTH ODELL AVE |
| | CHICAGO IL 60634 |
| Account Number: 0359394337 | |
| Home Phone #: (773)836-9306 | |

Visit us at www.gmacmortgage.com for account information or to apply on-line.

8690AR 10(19)07 08:30 0004739 20080215 H8208102 GMARM   I 0Z DOM H820810000+ 146316   GM

#BWNHJPY
#KW0472718658Z#

|||||||||||||||||||||||||||||||||||||||||||

LEILANI I SULIT
3415 N ODELL AVE
CHICAGO IL 60634-3440



For information about your existing account, please call: (800) 766-4622.

For information about refinancing or obtaining a new loan, please call:
Nationwide, 24 hours      (800) 753-4622
Or to find a branch near you (800) 888-4622

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for Inquiries on the reverse side.

### Account Information

| | |
|---|---|
| Account Number | 0359394337 |
| Current Statement Date | February 14, 2008 |
| Maturity Date | November 01, 2036 |
| Interest Rate | 7.75000 |
| Current Principal Balance* | $436,932.94 |
| Current Escrow Balance | $388.95 |
| Interest Paid Year-to-Date | $6,886.32 |
| Taxes Paid Year-to-Date | $1,467.32 |

### Details of Amount Due/Paid

| | |
|---|---|
| Minimum Payment Without Escrow | $1,508.27 |
| Subsidy/Buydown | $0.00 |
| Escrow | $356.84 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $1,865.11 |
| Account Due Date | March 01, 2008 |

| Pmt Options this Month | Amount | Impact |
|---|---|---|
| Prin & Int Pmt based on 15-year term | $4,686.72 | You will pay some of the principal on your loan. You will reduce your loan balance. |
| Prin & Int Pmt based on 30-year term | $3,534.71 | You will pay some of the principal on your loan. You will reduce your loan balance. |
| Interest Only Payment | $3,189.90 | You will not pay any principal on your loan. You will not reduce your loan balance. |
| Minimum Payment | $1,865.11 | You will not cover the monthly interest on your loan. You will increase your loan balance. |

### Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Principal Curtailment | 02/01/08 | 02/14/08 | $1,734.89 | $1,734.89 | | | | | |
| Payment | 02/01/08 | 02/14/08 | $1,865.11 | $1,406.80- | $2,915.07 | $356.84 | | | $1,406.80 |
| County Tax Paid | 01/01/08 | 02/07/08 | $1,467.32 | | | $1,467.32 | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

The options for your next payment are displayed above. If you elect to make the Minimum Payment and that payment amount is less than the Interest Only payment, the difference or shortage will be added to the principal balance (shown as a negative amount in the "Account Activity" transactions displayed above) and will accrue additional interest. Please refer to your mortgage documents if amounts are not displayed for all payment options.

EXHIBIT

B

**See Reverse Side For Important Information**

08CV4223

JUDGE MAROVICH

MAGISTRATE JUDGE BROWN

AEE

08CV4223

Yahoo! Mail Case:1:08-cv-04223 abbey_st_claire@yahoo.com Document 1 JUDGE MARKOVICH Filed 07/25/2008 Page 1 of 3 Page 1 of 4

MAGISTRATE JUDGE BROWN

AEE



Yahoo! | My Yahoo! | Mail | Tutorials | More     Make Y! your home page abbey_st_claire Sign Out | All-New Mail | Help

 **YAHOO!** MAIL Classic

Search: [ ] [Web Search]



EARN YOUR
**Master's Degree Online**
IN
**15 MONTHS**

Colorado Tech University

[MORE INFO]

| Mail | Contacts | Calendar | Notepad | Mail For Mobile - Mail Upgrades - Options |

[Check Mail] [Compose]

 See your credit score - free

**Folders** [Add - Edit]
Inbox
Draft
Sent
**Bulk (3)** [Empty]
Trash [Empty]

**My Folders** [Hide]
LAWYERS.COM
abbey st claire...
bill payments
cook county.gov
hezzle
lawrence sulit
**leilani sulit, rn (11)**
**palmettogba (415)**
**patrick (112)**
sherwin sulit

**Search Shortcuts**
My Photos
My Attachments

 See full-length TV shows now.

Print FREE Grocery Coupons

Rates as low as 5.5% 30-yr fix

Previous | Next | Back to Messages

[Delete] [Reply ▼] [Forward ▼] [Spam] [Move... ▼]

This message is not flagged. [ Flag Message - Mark as Unread ]     Printable View

**Subject:** 📎 FW: Prepayment penalty
**Date:** Mon, 14 Jan 2008 15:49:46 -0600
**From:** "LaPalio-Lakin, Gina - IL" <Gina.LaPalio-Lakin@GMACM.COM> 📇 Add to Address Book 📱 Add Mobile Alert
**To:** abbey_st_claire@yahoo.com
**CC:** "Dubin, Robert - IL (GMACM)" <Robert.Dubin@gmacm.com>

Hello Lelani- attached are the documents we have on file for you.

Gina LaPalio-Lakin, M. A.
Licensed Loan Officer
773-631-1436 office
773-485-9966 mobile
866-923-7531 efax
GMAC Mortgage, LLC

www.gmacGINA.net

Click below for FREE, secure, no-obligation access to local and national MLS property listings:



**EXHIBIT**

C-1



Working? Degrees
fast as 2 yrs.

**From:** Krull, Kari - IA
**Sent:** Friday, November 30, 2007 11:21 AM
**To:** LaPalio-Lakin, Gina - IL
**Subject:** RE: Prepayment penalty

Hi Gina,

I have attached a copy of the loan documents for you to review.

Thanks
Kari

<div align="center">

Kari Krull
Executive Offices
Direct Phone: 319-236-7510
Phone: 800-766-4622- ext 2367510
Fax: 866-457-7761
Email: Kari.Krull@gmacm.com

</div>

---

**From:** LaPalio-Lakin, Gina - IL
**Sent:** Thursday, November 29, 2007 10:23 AM
**To:** Krull, Kari - IA
**Subject:** RE: Prepayment penalty

Hi Kari- thanks for the response. I have since learned from borrower that she
does not recall the broker who originated the loan ever disclosing to her that
there was a PPP. She also says that the has the disclosure with her forged
signature on it. (i.e., the broker forged her signature on the PPP disclosure). Is
there anything we can advise her to do?

Gina LaPalio-Lakin, M. A.
Licensed Loan Officer
773-631-1436 office
773-485-9966 mobile
866-923-7531 efax
GMAC Mortgage, LLC

www.gmacGINA.net

Click below for FREE, secure, no-obligation access to local and national
MLS property listings:



<div style="float:right; border: 3px solid black; border-radius: 10px; padding: 10px;">

**EXHIBIT**

C-2

</div>

**From:** Krull, Kari - IA
**Sent:** Thursday, November 29, 2007 9:37 AM
**To:** LaPalio-Lakin, Gina - IL
**Subject:** RE: Prepayment penalty

Hi Gina,

No waiver. The PPP is remitted to the investor.
The PPP expires on 10/17/09.

Thanks
Kari


Kari Krull
Executive Offices
Direct Phone: 319-236-7510
Phone: 800-766-4622- ext 2367510
Fax: 866-457-7761
Email: Kari.Krull@gmacm.com

**From:** LaPalio-Lakin, Gina - IL
**Sent:** Tuesday, November 27, 2007 3:12 PM
**To:** Servicing Branch Inquiries
**Subject:** Prepayment penalty

Hi there- I have an existing GMAC customer Lelani Solit, who has contacted me about doing a rate/term refi. Her current loan number is 035 939 4337. She has a prepayment penalty on her loan and is wondering if there is any way it can be waived since we'd be doing an internal refi. I believe her PPP would be up in 10/09 and the fee would be 6 months of interest. Her current interest rate is above 8%. I somehow remember hearing that PPPs are illegal in IL if the rate is above 8%- is that true?

Is there any way we can waive or reduce the PPP on this loan if she does a refi internally?

Thanks.



Gina LaPalio-Lakin, M. A.
Licensed Loan Officer
773-631-1436 office
773-485-9966 mobile
866-923-7531 efax
GMAC Mortgage, LLC

www.gmacGINA.net

Click below for FREE, secure, no-obligation access to local and national MLS property listings:

**EXHIBIT**

tabbies®  C-3



**IMPORTANT IDENTIFICATION BULLETIN!**

**ATTENTION CLOSING AGENTS:**

**IN COMPLIANCE WITH THE US PATRIOT ACT, IT IS IMPERATIVE THAT OUR BORROWER(S) AND/OR THOSE INDIVIDUALS AUTHORIZED BY BANKUNITED, FSB TO EXECUTE ANY AND ALL CLOSING DOCUMENTS RELATED TO THIS LOAN CLOSING, PROVIDE YOU WITH A VALID PROOF OF IDENTIFICATION.**

**THIS PROOF OF IDENTIFICATION MUST BE IN THE FORM OF AN UNEXPIRED GOVERNMENT PHOTO IDENTIFICATION WITH SIGNATURE.  THIS FORM OF IDENTIFICATION MAY BE A STATE DRIVER'S LICENSE OR PASSPORT.**

**YOU MUST PROVIDE A COPY OF THIS PHOTO IDENTIFICATION WITH THE CLOSED LOAN PACKAGE.**

**YOUR FAILURE TO COMPLY WITH THIS REQUIREMENT MAY JEOPARDIZE YOUR FIRM'S STATUS AS AN APPROVED SETTLEMENT AGENT WITH BANKUNITED, FSB.**

**THANK YOU**

**CLOSING DEPARTMENT
RESIDENTIAL LENDING DIVISION**

MFCD5063                    000506580-0

**EXHIBIT**

D-1

# ☙BankUnited

## Adjustable Rate Note
**(1 Year MTA Index – Initial Discounted Monthly Payment –**
**Payment Caps and Maximum Rate)**
**(1 Month MTA ARM)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND MY PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THIS NOTE. THE PRINCIPAL BALANCE OF THIS NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.**

| October 17, 2006 | NORTHFIELD | Illinois |
|---|---|---|
| [Date] | [City] | [State] |

3415 NORTH ODELL AVENUE
CHICAGO, IL 60634

[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 424,000.00 plus any amounts added in accordance with Section 3(E) of this Note (this amount is collectively called "Principal"), plus interest, to the order of Lender. Lender is    BankUnited, FSB.

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2.    INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.0000    %. The interest rate I will pay will change as provided in this Section 2.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.
**(B) Interest Change Dates**
The interest rate I will pay may change on the first day of    December 2006 and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".
**(C) Interest Rate Limits**
My interest rate will never be greater than    10.9500    %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.
**(D) Index**
Beginning with the first Interest Change Date, my interest rate will be based on an index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rate (H.15)." The Twelve-onth Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."
If the Index, or any substitute index, is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
**(E) Calculation of Interest Rate Changes**
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding Three and 2900/10000    percentage points ( 3.2900    %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.
In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

**3.    PAYMENTS**
**(A) Time and Place of Payments**
I will make my monthly payments on the first day of every month, beginning on    December 2006 . I will make a payment every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    November 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

MFCD5063                                    Page 1 of 4                            Initials: _____
                                                                                   000506580-0

**EXHIBIT**

D-2

 

I will make monthly payments at

7815 NW 148 ST., MIAMI LAKES, FL 33016

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payment**

My initial monthly payment will be in the amount of U.S. $ 1,403.05 . My initial monthly payment was calculated using a rate of 1.2000 %, the original Principal, and the Maturity Date. This rate is lower than the initial interest rate stated in Section 2(A) above.

The amount of my initial monthly payment will change as provided in this Section 3.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on December 1, 2007 and on that same day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change as provided under Section 3(F) below.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my monthly payments are changed earlier as provided in Section 3(F) below.

**(D) Calculation of Monthly Payment Changes; Limitations**

On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date. However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date. The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

**(E) Changes in My Unpaid Principal**

My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note. In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time. For each month that my monthly payment is less than the interest that accrues under the Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time. For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 115% limitation on a monthly payment due date, I will begin paying a new monthly payment on that due date, and will continue to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation. The new monthly payment will be the amount that would be sufficient to repay my then unpaid Principal, together with interest at the rate in effect during the month prior to the payment due date, in full in substantially equal monthly installments through the Maturity Date. The new monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

**(G) Required Full Monthly Payment**

On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes.

My partial Prepayment may reduce the amount of my monthly payments after the first Interest Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase or other factors.

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

MFCD6083              Page 2 of 4              Initials: ___

800508660-0

**EXHIBIT**

D-3

 

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0000    % of such monthly payment due. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

"Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that

MFCD6083
Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 3 of 4

Initials: ____

000506580-0

**EXHIBIT**

tabbies®

D-4




All other terms and conditions of the above referenced Note remain in full force and effect. By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Penalty Addendum.

WITNESS THE HAND(S) AND SEALS OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
LEILANI I. SULIT                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

DATE __October 17, 2006_____

**EXHIBIT**

tabbies'

D-5



## ADDENDUM TO THE NOTE
### Prepayment Penalty
### (Three Year Penalty Period)

This prepayment penalty addendum ("Addendum") is made this  17  day of  October 2006  and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") to BankUnited, FSB

(the "Lender") and dated the same date as this Addendum (the "Note").

The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

This Addendum provides for a penalty with respect to prepayments of the obligation represented by the Note made within the first three years of the date of the Note.

Accordingly, Paragraph 5 of the Note (Borrower's right to prepay) is replaced with this prepayment penalty addendum.

**Additional Covenants.**  In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

**Borrowers Right To Prepay – Prepayment Penalty.**

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment".  When I make a prepayment, I will give notice to the Note Holder in writing that I am doing so.

Subject to the prepayment penalty specified below, I may make a full prepayment or partial prepayments of my obligation.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If I make a full prepayment within the first three years of the date of the Note, that pays the loan off in full, I will pay a prepayment penalty in the amount of six months' advance interest (at the rate of interest in effect at the time the full prepayment is made) on the original principal balance the loan had on the initial date of the Note.

If I make partial prepayments of this loan during the first three years of the Note term, beginning on the date of the Note, I will pay a prepayment penalty in the amount of six months' advance interest (at the rate of interest in effect at the time any such partial prepayments are made) on the amount by which the aggregate prepayments made within any consecutive twelve month period exceed twenty percent (20%) of the original principal balance the loan had on the initial date of the Note.  No prepayment penalty will be assessed for any prepayment made after the first three years of the Note term.

The Note Holder's failure to collect a prepayment penalty at the time a prepayment is received shall not be deemed a waiver of such penalty and any such penalty calculated in accordance with this section shall be payable on demand.

MFCD5035

Page 1 of 2

000506580-0
3HPP  95137L1 - 03/2006

EXHIBIT

D-6

Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Leilani Sulit_ _____ (Seal) _____ (Seal)
LEILANI I. SULIT                    -Borrower                        -Borrower

_____ (Seal) _____ (Seal)
                  -Borrower                        -Borrower

_____ (Seal) _____ (Seal)
                  -Borrower                        -Borrower

[Sign Original Only]

MFCD6063                                    000506560-0

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate –
Monthly Rate Change

Page 4 of 4                                    Initials: _____

EXHIBIT

D-7

 

## A. SETTLEMENT STATEMENT

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| 1. __ FHA  2. __ FmHA  3. __ Conv Unins | | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number | |
| 4. __ VA  5. __ Conv Ins | | 06-1480 | 000506580-0 | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (P.O.C.) were paid outside the closing, they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| LEILANI I. SULIT<br><br>3415 N. ODELL AVE.<br>CHICAGO, IL 60634 | | BANK UNITED, FSB<br><br>7815 NW 148 STREET<br>MIAMI LAKES, FL 33016 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 3415 N. ODELL AVE.<br>CHICAGO, IL 60634 | CAMBRIDGE TITLE COMPANY | |
| | Place of Settlement<br>400 CENTRAL AVENUE<br>NORTHFIELD, IL 60093 | I. Settlement Date<br>10/17/06<br>DD: 10/23/06 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,456.74 | 403. | |
| 104. PAYOFF WELLS FARGO HOME MORTGAGE | 244,033.35 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes         to | | 406. City/town taxes         to | |
| 107. County taxes            to | | 407. County taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 252,490.10 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. Amounts Paid By or in Behalf of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 424,000.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes         to | | 510. City/town taxes         to | |
| 211. County taxes            to | | 511. County taxes            to | |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 424,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. Cash At Settlement From or To Borrower** | | **600. Cash At Settlement To or From Seller** | |
| 301. Gross amount due from borrower (line 120) | 252,490.10 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 424,000.00 | 602. Less reduction amount due seller (line 520) | |
| 303. CASH    TO    BORROWER | 171,509.90 | 603. CASH    TO    SELLER | 0.00 |

**EXHIBIT**

D-8

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT      **SETTLEMENT STATEMENT**     PAGE 2

| L. SETTLEMENT CHARGES: | | FILE #: 06-1480 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | | | @ = | | |
| Division of commission (line 700) as follows: | | | | | |
| 701. $ | to | | | | |
| 702. $ | to | | | | |
| 703. Commission paid at Settlement | | | | | |
| 704. | | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | P.O.C. | | |
| 801. Loan Origination Fee | % | | | | |
| 802. Loan Discount | % | | | | |
| 803. Appraisal Fee | to | FIRST CHICAGO | | 225.00 | |
| 804. Credit Report | to | | | | |
| 805. Lender's Inspection Fee | to | | | | |
| 806. Mtg Ins Application Fee | to | | | | |
| 807. | to | | | | |
| 808. UNDERWRITING FEE | | BANK UNITED, FSB | | 288.00 | |
| 809. PROCESSING FEE | | FIRST CHICAGO | | 720.00 | |
| 810. YSP PAID BY BANKUNITED, FSB | | $14840 POC TO FIRST CHICAGO | | | |
| 811. MORTGAGE BROKER FEE | | FIRST CHICAGO | | 4,240.00 | |
| 812. DOCUMENT PREPARATION | | BANK UNITED, FSB | | 250.00 | |
| 813. FLOOD CERTIFICATION | | FIRST AMERICAN FLOOD DATA SERVICES | | 14.00 | |
| 814. TAX SERVICE FEE | | FCIS | | 62.00 | |
| 815. WIRE FEE | | BANK UNITED, FSB | | 30.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest from 10/23/06 to 11/01/06 @ $ 94.2222 /day 9 Days | | | | 848.00 | |
| 902. Mortgage Insurance Premium for | to | | | | |
| 903. Hazard Insurance Premium for | yrs | to $864.34 POC TO ALLSTATE | | | |
| 904. | | | | | |
| 905. | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | | | |
| 1001. Hazard Insurance | | 5 mo.@$ 72.03 /mo. | | 360.15 | |
| 1002. Mortgage Insurance | | mo.@$ /mo. | | | |
| 1003. City property taxes | | mo.@$ /mo. | | | |
| 1004. County property taxes | | 4 mo.@$ 232.91 /mo. | | 931.64 | |
| 1005. Annual Assessments | | mo.@$ /mo. | | | |
| 1006. | | mo.@$ /mo. | | | |
| 1007. | | mo.@$ /mo. | | | |
| 1008. AGGREGATE ADJUSTMENT | | | | -72.05 | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or closing fee | to | | | | |
| 1102. Abstract or title search | to | | | | |
| 1103. Title examination | to | | | | |
| 1104. Title insurance binder | to | | | | |
| 1105. Document preparation | to | | | | |
| 1106. Notary fees | to | | | | |
| 1107. Attorney's fees | to | | | | |
| (includes above items No: | ) | | | | |
| 1108. Title insurance | to | CAMBRIDGE TITLE COMPANY | | 550.00 | |
| (includes above items No: | ) | | | | |
| 1109. Lender's coverage $ | 487,600.00 ---- 550.00 | | | | |
| 1110. Owner's coverage $ | | | | | |
| 1111. EPA ENDORSEMENT | | | | | |
| 1112. 6.2 NEG ARM ENDORSEMENT | | | | | |
| 1118. ALTA 8.1 & ALTA 9 ENDORSEMENT | | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording fees | Deed $ | Mortgage $ | Release $ 0.00 | | |
| 1202. City/county/stamps | Deed $ | Mortgage $ | | | |
| 1203. State tax/stamps | Deed $ | Mortgage $ | | | |
| 1204. | | | | | |
| 1205. ASSIGNMENT OF MORTGAGE RECORDING FEE | | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. Survey | to | | | | |
| 1302. Pest Inspection | to | | | | |
| 1303. RENTAL HOUSING SURCHARGE | | COOK COUNTY RECORDER | | 10.00 | |
| 1304. | | | | | |
| 1305. | | | | | |
| 1306. | | | | | |
| 1307. | | | | | |
| 1308. | | | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103 and 502, Sections J and K) | | | | 8,456.74 | 0.00 |

_[signature] Deborah Boyd 10/17/06_
DEBORAH BOYT    Buyer/Borrower       Seller

_[signature] Irma C. Rasho_      10-17-06
CAMBRIDGE TITLE COMPANY    Buyer/Borrower    Date       Seller    Date

**EXHIBIT**

tabbies®   D-9

11/30/2007 18:07 FAX

● ●

**INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT**    Date: October 17, 2006

| BORROWER(S) NAME AND ADDRESS | LENDER / SERVICER NAME AND ADDRESS |
|---|---|
| LEILANI I. SULIT<br>3415 NORTH ODELL AVENUE<br>CHICAGO, IL 60634 | BANKUNITED, FSB<br>CORPORATION<br>7815 NW 148 STREET<br>MIAMI LAKES, FL 33016 |

| LOAN NO.<br>000506580-0 | TOLL FREE NO.<br>MORTGAGE INSURANCE / CASE NUMBER |
|---|---|

☐ Your  ☐ monthly  ☐ biweekly    mortgage payment for the coming year will be $_____    of which
$_____    will be for  principal and interest $_____    will go into your escrow account, and $_____
will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment.

☒ Your first  ☒ monthly  ☐ biweekly    mortgage payment for the coming year will be $1,707.99    of which
$1,403.05    will be for  principal and interest $304.94    will go into your escrow account, and $_____
will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment.
The terms of your loan may result in changes to the principal and interest payments during the year.

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.

| MONTH/<br>PAYMENT NO. | PAYMENTS TO<br>ESCROW ACCT. | PAYMENTS FROM<br>ESCROW ACCT. | DESCRIPTION | ESCROW ACCT.<br>BALANCE |
|---|---|---|---|---|
| Starting balance: | | | $ | 1,219.74 |
| 12/01/2006 | 304.94 | | | 1,534.68 |
| 01/01/2007 | 304.94 | | | 1,829.62 |
| 02/01/2007 | 304.94 | | | 2,134.56 |
| 03/01/2007 | 304.94 | 1917.41 (School Tax1917.41) | | 164.82 |
| 04/01/2007 | 304.94 | | | 1,346.98 |
| 05/01/2007 | 304.94 | | | 1,651.92 |
| 06/01/2007 | 304.94 | | | 1,956.86 |
| 07/01/2007 | 304.94 | | | 2,261.80 |
| 08/01/2007 | 304.94 | 864.34 Haz Ins(864.34) | | 1,702.40 |
| 09/01/2007 | 304.94 | 1917.41 (School Tax1917.41) | | 89.93 |
| 10/01/2007 | 304.94 | | | 914.82 |
| 11/01/2007 | 304.94 | | | 1,219.76 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)*

Cushion selected by servicer: $609.88

(Signatures are optional.) By signing below, borrower acknowledges receipt of this Initial Escrow Account Disclosure Statement.

_Leilani Sulit_                10-17-06
Borrower LEILANI I. SULIT        Date    Borrower                Date

Borrower                Date    Borrower                Date

© 1993 Harland Financial Solutions, Inc.                GreatDocs™
ITEM 7167L0 (0408)                To Order Call: 1-800-968-5775

**EXHIBIT**

D-10

## Initial Escrow Account Disclosure Statement

Applicants:  LEI LANI SULIT                     Servicer:

Property Address:  3415 N ODELL AVE
                   CHICAGO, IL 60634
Application No:  SUL_LANI_09_06_REF             Date Prepared:    09/15/2006

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.

| Month | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
|  |  |  | Initial Deposit |  |
| Dec | 279.00 | 0.00 |  | 279.00 |
| Jan | 279.00 | 0.00 |  | 558.00 |
| Feb | 279.00 | 0.00 |  | 837.00 |
| Mar | 279.00 | 0.00 |  | 1,116.00 |
| Apr | 279.00 | 0.00 |  | 1,395.00 |
| May | 279.00 | 0.00 |  | 1,674.00 |
| Jun | 279.00 | 0.00 |  | 1,953.00 |
| Jul | 279.00 | 0.00 |  | 2,232.00 |
| Aug | 279.00 | 0.00 |  | 2,511.00 |
| Sep | 279.00 | 0.00 |  | 2,790.00 |
| Oct | 279.00 | 0.00 |  | 3,069.00 |
| Nov | 279.00 | 0.00 |  | 3,348.00 |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR)

REQUIRED CUSHION: $        0.00

YOUR MONTHLY MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE $      1,732.16    OF WHICH $  1,453.16
WILL BE FOR PRINCIPAL AND INTEREST AND $        279.00    WILL GO INTO YOUR ESCROW ACCOUNT.

_____  _Lei Lani Sulit_  _9/15/06_  _____
Applicant  LEI LANI SULIT                     Date      Applicant                                      Date

* Tax: Taxes, Haz: Hazard Insurance, MI: Mortgage Insurance, Schl: School Taxes, Fld: Flood Insurance, UD1: User Defined 1, UD2: User Defined 2

Calyx Form leads.frm 5/01

**EXHIBIT**

D-11

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower  _Leilani Sulit_   Co-Borrower
LEILANI SULIT

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA | | X | Conventional | | Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|---|---|---|
| | FHA | | | USDA/Rural Housing Service | | | | 000906860-0 |

| Amount | Interest Rate | No. of Months | Amortization Type: | Fixed Rate | Other (explain): |
|---|---|---|---|---|---|
| $434,000.00 | 8.0000% | 360 | | GPM | X ARM (type): 1 MNTH MTA |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 3418 NORTH ODELL AVENUE, CHICAGO, IL 60634 | 1 |
| Legal Description of Subject Property (attach description if necessary) | Year Built |
| | 1960 |

| Purpose of Loan | | Purchase | | Construction | | Other (explain): | Property will be: |
|---|---|---|---|---|---|---|---|
| X | Refinance | | Construction-Permanent | | | | X Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made | ☐ to be made |
|---|---|---|---|---|---|---|
| 2000 | $200,000.00 | $246,180.00 | CASH-OUT REFINANCE | | Cost: $ | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| LEILANI I SULIT AND PATRICIO L SULIT | JOINT TENANCY | X Fee Simple |
| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain): | | ☐ Leasehold (show expiration date) |
| REFINANCE | | |

### III. BORROWER INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | | Co-Borrower's Name (include Jr. or Sr. if applicable) | | |
| LEILANI SULIT | | | | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (773) 736-9175 | 07/26/1948 | 16.0 | | | | |

| ☐ Married | X Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) | ☐ Married | ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) |
|---|---|---|---|---|---|
| ☐ Separated | | no. 0   ages | ☐ Separated | | no.   ages |

| Present Address (street, city, state, ZIP) | X Own ☐ Rent | 16.0 No. Yrs. | Present Address (street, city, state, ZIP) | ☐ Own ☐ Rent | No. Yrs. |
|---|---|---|---|---|---|
| 3418 N. ODELL AVENUE CHICAGO, IL 60634 | | | | | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) | ☐ Own ☐ Rent | No. Yrs. | Former Address (street, city, state, ZIP) | ☐ Own ☐ Rent | No. Yrs. |
|---|---|---|---|---|---|
| | | | | | |

### IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer | X Self Employed | Yrs. on this job | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
| AISY ST. CLAIRE 3418 N ODELL AVE CHICAGO, IL 60634 | | 16.2 | | | |
| | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
| | | 16.0 | | | |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| OWNER HOME HEALTH CARE AGEN | (773) 736-9306 | | | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income | | | Monthly Income |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income | | | Monthly Income |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

Freddie Mac Form 65 7/05
ITEM 1106L1 (0508)
(Page 1 of 5 pages)
Fannie Mae Form 1003 7/05
GreatDocs™ - To Order Call 1-800-966-5775
Apt# 000906860-0

EXHIBIT
D-12
tabbies®

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 30,300.00 | $ | $ 30,300.00 | Rent | $ | |
| Overtime | | | 0.00 | First Mortgage (P&I) | | 2,490.00 | 1,483.05 |
| Bonuses | | | 0.00 | Other Financing (P&I) | | | 72.53 |
| Commissions | | | 0.00 | Hazard Insurance | | | 223.31 |
| Dividends/Interest | | | 0.00 | Real Estate Taxes | | | |
| Net Rental Income | | | 0.00 | Mortgage Insurance | | | |
| Other (before completing, see the notice in describe other income," below) | | | 0.00 | Homeowner Assn. Dues | | | |
| | | | 0.00 | Other | | | |
| Total | $ 30,300.00 | $ | $ 30,300.00 | Total | $ 2,490.00 | $ 1,787.89 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income     Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person too.      Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| Cash deposit toward purchase held by: | | | | |
| List checking and savings accounts below | | Name and address of Company US DEPT ED | $ Payment/Months  163.00  104 | $ 18,837.00 |
| Name and address of Bank, S&L, or Credit Union LASALLE | | | | |
| Acct. no. 840075  Name and address of Bank, S&L, or Credit Union WASHINGTON MUTUAL. | $ 7,234.38 | Acct. no. 3370920421  Name and address of Company CHASE | $ Payment/Months  157.00  89 | $ 8,393.00 |
| Acct. no. 3196307916  Name and address of Bank, S&L, or Credit Union WASHINGTON MUTUAL. | $ 1,367.57 | Acct. no. 4288890042180387  Name and address of Company CHASE | $ Payment/Months  176.00  89 | $ 8,987.00 |
| Acct. no. 99009270722  Name and address of Bank, S&L, or Credit Union | $ 38,667.21 | Acct. no. 5491043390373497  Name and address of Company CHASE | $ Payment/Months  110.00  90 | $ 6,890.00 |
| Acct. no. | $ | Acct. no. 4147282911814146  Name and address of Company DISCOVER FIN SVCS LLC | $ Payment/Months  99.00  92 | $ 4,761.00 |
| Stocks & Bonds (Company name/ number & description) | $ | | | |
| Life insurance net cash value  Face amount $ | $ | Acct. no. 601100773652  Name and address of Company HSBC/BSBO | $ Payment/Months  77.00  26 | $ 1,846.00 |
| Subtotal Liquid Assets | $ 47,289.28 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 2,996,196.00 | | | |
| Vested interest in retirement fund | $ | Acct. no. 323891180073958  Name and address of Company From Overflow Sheet | $ Payment/Months  15,183.00 | $ 2,219,826.54 |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no.  Alimony/Child Support/Separate Maintenance Payments Owed to | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 15,983.00 | |
| Total Assets a. | $ 2,043,435.28 | Net Worth (a minus b) ► $ 388,912.72 | Total Liabilities b. | $ 2,285,922.54 |

EXHIBIT

D-13

## VII. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 3418 N. ODELL AVENUE CHICAGO, IL 60634 | 1-FAMILY | $ 348,184 | 343,718 | $ | 2,488 | $ | $ |
| 3316 N OAK PARK CHICAGO, IL 60634 | R 1-FAMILY | 482,800 | 368,763 | 2,488 | 2,728 | - | -588 |
| From Overflow Sheet | | 1,210,800 | 1,818,108 | 10,700 | 8,808 | 878 | -3,885 |
| Totals | | $ 2,208,182.00 | $ 2,319,883.94 | $ 13,188.00 | $ 15,119.00 | $878.00 | $ -3,742.80 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s).

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VIII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 343,718.94 |
| e. Estimated prepaid items | 2,143.79 |
| f. Estimated closing costs | 5,306.88 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 351,267.61 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 434,008.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 434,008.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -172,742.80 |

## IX. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower Yes / No | Co-Borrower Yes / No |
|---|---|---|
| a. Are there any outstanding judgments against you? | No X | |
| b. Have you been declared bankrupt within the past 7 years? | No X | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | No X | |
| d. Are you a party to a lawsuit? | No X | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | No X | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | No X | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | No X | |
| h. Is any part of the down payment borrowed? | No X | |
| i. Are you a co-maker or endorser on a note? | No X | |
| j. Are you a U.S. citizen? | Yes X | |
| k. Are you a permanent resident alien? | No X | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | Yes X | |
| m. Have you had an ownership interest in a property in the last three years? | Yes X | |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

## X. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _Leilani Bulit_ LEILANI BULIT | 10/17/06 | X | |

Freddie Mac Form 65 7/05    ITEM (1356.3 (0508)    (Page 3 of 3 pages)    Fannie Mae Form 1003 7/05    GreatDocs™ • To Order Call: 1-800-968-5775    Apt# 000308590-0

EXHIBIT
tabbies®
D-14

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | | | CO-BORROWER | ☐ I do not wish to furnish this information | | |
|---|---|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☒ Not Hispanic or Latino | | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino | |
| Race: | ☐ American Indian or Alaska Native | ☒ Asian | ☐ Black or African American | Race: | ☐ American Indian or Alaska Native | ☐ Asian | ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☐ White | | | ☐ Native Hawaiian or Other Pacific Islander | ☐ White | |
| Sex: | ☒ Female | ☐ Male | | Sex: | ☐ Female | ☐ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | NANCY LICCARDI | FIRST CHICAGO MORTGAGE CO |
| ☒ Face-to-face interview | Interviewer's Signature          Date 10-17-06 | 6146 NORTH LINCOLN AVE |
| ☐ Mail | *Nancy Liccardi*                 08/20/2008 | CHICAGO, IL 60659 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (773) 509-9400 | |

Freddie Mac Form 65 7/05
ITEM 1136L4 (0508)                         (Page 4 of 5 pages)                         Fannie Mae Form 1003 7/05
                                                                                      GreatDocs™ ▪ To Order Call: 1-800-968-5775
                                                                                      Apt#: 000908680-E



EXHIBIT

D-15

**CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION**

| | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: LEILANI SULIT | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: 0008086890-8 |

| Borr | Creditor | PAC Account Number | Monthly Pmt | Mos | Balance |
|---|---|---|---|---|---|
| B | TBD/CBUSA | 6035320034384261 | $10.00 | 11 | $113.00 |
| B | HSBC/VLCTY | 2446001910100258 | $10.00 | 8 | $83.00 |
| B | HSBC/VLCTY | 321910 | $10.00 | 8 | $83.00 |
| B | MARATHON PETROLEUM CO | 1004837777 | $10.00 | 4 | $35.00 |
| B | GEMB/CARE CREDIT | 601918183563 | $10.00 | 3 | $29.00 |
| B | AMERICAN HOME MTG SRV | 1000674061 | $2,725.00 | 0 | $365,759.00 |
| B | WASHINGTON MUTUAL FA | 9083062275981 | $1,328.00 | 0 | $358,630.00 |
| B | AMERICAN HOME MTG SRV | 1001224907 | $1,500.00 | 0 | $357,036.00 |
| B | WELLS FARGO HOME MORTG | * 7060197198666 | $2,489.00 | 0 | $243,718.54 |
| B | Flick Mortgage | 8344084 | $2,501.00 | 0 | $358,350.00 |
| B | Flick Mortgage | 6081535 | $1,042.00 | 0 | $95,860.00 |
| B | MLS | 4841 | $2,264.00 | 0 | $324,380.00 |
| B | MLS | 4872 | $1,270.00 | 0 | $115,850.00 |
| | Totals | | $15,169.00 | | $2,219,926.54 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X  _Leilani Sulit_  LEILANI SULIT | 10-17-06 | X | |

Freddie Mac Form 65 7/05
ITEM 1136L5 (0508)

(Page 5 of 5 pages)

Fannie Mae Form 1003 7/05
GreatDocs™ • To Order Call 1-800-968-5775
Apd#: 0008086890-8



**EXHIBIT**

D-16



## IMPORTANT IDENTIFICATION BULLETIN!

**ATTENTION CLOSING AGENTS:**

IN COMPLIANCE WITH THE US PATRIOT ACT, IT IS IMPERATIVE THAT OUR BORROWER(S) AND/OR THOSE INDIVIDUALS AUTHORIZED BY BANKUNITED, FSB TO EXECUTE ANY AND ALL CLOSING DOCUMENTS RELATED TO THIS LOAN CLOSING, PROVIDE YOU WITH A VALID PROOF OF IDENTIFICATION.

THIS PROOF OF IDENTIFICATION MUST BE IN THE FORM OF AN UNEXPIRED GOVERNMENT PHOTO IDENTIFICATION WITH SIGNATURE. THIS FORM OF IDENTIFICATION MAY BE A STATE DRIVER'S LICENSE OR PASSPORT.

YOU MUST PROVIDE A COPY OF THIS PHOTO IDENTIFICATION WITH THE CLOSED LOAN PACKAGE.

YOUR FAILURE TO COMPLY WITH THIS REQUIREMENT MAY JEOPARDIZE YOUR FIRM'S STATUS AS AN APPROVED SETTLEMENT AGENT WITH BANKUNITED, FSB.

THANK YOU

CLOSING DEPARTMENT
RESIDENTIAL LENDING DIVISION

MFCD5063                                        000506580-0

**EXHIBIT**

D-17

 **Illinois Department of Financial and Professional Regulation**
Division of Banking

ROD R. BLAGOJEVICH
Governor

DEAN MARTINEZ
Secretary

JORGE A. SOLIS
Director
Division of Banking

**©COPY**

February 11, 2008

First Chicago Mortgage Co. MB.0006097
Attn: Rony Khezeran
6150 N Lincoln Ave
Chicago, IL 60659

Re: Leilani Sulit - File Number: 2008-555

Dear Licensee:

The enclosed correspondence has been submitted to be reviewed by the Consumer Services section of the Division of Banking. Our evaluation requires a response from your company to determine your compliance to rules of license in this transaction. After reviewing the matter and resolving to the extent possible, take each of the following specific actions:

- Send a letter directly to the consumer that responds to all issues of the complaint **by March 5, 2008.**

- Send the completed, second page of this notice to this office only.

- Send **a copy of the above letter to the Consumer Services section by the above due date, with a copy of the following signed preliminary documents, disclosures, and notices** (Also, when applicable, send a copy of the Brokerage Agreement; Rate Lock Agreement; Notice of Prepayment Penalty; Approval/Denial Notice; the HUD-1 Settlement Statement):

    1) Application Form 1003
    2) Good Faith Estimate
    3) Truth-In-Lending
    4) Notices of change

<u>Your response will be accepted only if:</u>  All issues of the complaint are addressed. All applicable, requested documents are sent with a copy of the response letter. The response is written on official company letterhead, clearly identifying the writer (this includes Loan Originators). The completed second page of this notice is enclosed with the response to this office. **Failure to completely adhere to the requests of this notice by the above due date** may be viewed as an indicator of noncompliance in other areas of license, which could prompt the scheduling of a special examination.

Thank you for your assistance, and cooperation.

Sincerely,

Virginia Calvin, Consumer Services Administrator
Division of Banking / Illinois Dept. of Financial & Professional Regulation
122 S. Michigan Avenue, Suite 1900
Chicago, Illinois 60603
312-793-3000

Enclosure

C: Leilani Sulit
3415 N. Odell Ave.
Chicago, IL 60634


EXHIBIT
E



**First Chicago Mortgage**

An Illinois Residential Mortgage Licensee

6146 N. Lincoln Ave. Chicago, IL 60659

Office: 773.509.9400 Fax: 773.509.9661

An Illinois Residential Mortgage Licensee

Ms. Leilani Sulit
3415 N. Odell Ave.
Chicago, IL 60634

**08CV4223**

**JUDGE MAROVICH**

**MAGISTRATE JUDGE BROWN**

**AEE**

Re: Consumer Services File Number 2008-555        *by certified mail*

Dear Ms. Sulit:

My name is Rony Khezeran and I'm the President of First Chicago Mortgage Co. I have received a copy of the complaint which you filed with the Consumer Services Department in the Division of Banking. This letter shall serve as a response to the issues you raised in your complaint.

For purposes of clarification, the gentleman that you referred to in your letter, Khorram Chaudry, is not a mortgage banker, and more specifically, Mr. Chaudry was not the loan originator. Your loan originator was Nancy Liccardi, Mr. Chaudry was her processor. Enclosed are the following documents which Ms. Liccardi signed as your loan officer: Mortgage Loan Origination Agreement, the Mortgage Brokerage Business Contract, the Prepayment Penalty Disclosure, the 1003 Loan Application, and the Truth-in-Lending Disclosure Statement.

With regard to the prepayment penalty, your letter states that you do in fact have a pre-payment penalty. But then you state that your original "Adjustable Rate Note" states that you do not have a pre-payment penalty. In general, if a Note does not have the pre-payment penalty language, then the borrower does not have to pay a penalty for paying off the loan early.

In any event, I must respectfully disagree with your assertion that you were not informed about a pre-payment penalty. Please review the Pre-Payment Penalty Disclosure, which you signed, and which explicitly states that your loan contains a pre-payment penalty. Also, the Truth-In-Lending disclosure enclosed with this letter states that "If you pay off early, you may have to pay a penalty."

More importantly, the Note should contain the pre-payment penalty language either in the Note itself or as a Rider to the Note. Although I do not have a copy of the Note, I know the bank would not fund the loan without your signature on that document. The bank's Lock-In Confirmation confirms the fact that there is a pre-payment penalty. I have attached the Lock-In Confirmation for you to look at.

I must also disagree with you when you say "you believe" that your signature was forged. It may be that you do not remember signing the documents, but nothing that I see in the file would lead me to believe that you did not sign them. This loan closed in October of 2006, and you presumably have been making payments all this time.

With regard to a title company being present, as far as I know this closing took place either at Cambridge Title or under its supervision.

If you have any other questions, please call me at (773)-509-9400.

Sincerely,

Rony Khezeran
President, First Chicago Mortgage Co.

**EXHIBIT**

F-1

( 1 )

# TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicants: **LEILANI SULIT** | Prepared By: **FIRST CHICAGO MORTGAGE CO.** |
| | **6146 N LINCOLN AVE** |
| Property Address **3415 N ODELL AVE** | **Chicago , IL  60659** |
| **CHICAGO,  IL 60634** | **773-509-9400** |
| Application No: **SUL_LEIL_09_06_REF** | Date Prepared: **09/15/2006** |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| *   1.542  % | $    *    104,523.21 | $    *    418,613.00 | $    *    523,136.92 |

☐ REQUIRED DEPOSIT:  The annual percentage rate does not take into account your required deposit
PAYMENTS:  Your payment schedule will be:

| | | Monthly Beginning: | | Monthly Beginning: | | Monthly Beginning: |
|---|---|---|---|---|---|---|
| 359 | 1,453.16 | 12/01/2006 | | | | |
| 1 | 1,452.48 | 11/01/2036 | | | | |

☑ DEMAND FEATURE:  This obligation has a demand feature.
☐ VARIABLE RATE FEATURE:  This loan contains a variable rate feature.  A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY:  Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE:  The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☑ If you purchase  ☑ property  ☐ flood insurance from creditor you will pay $  600.00  for a one year term.
SECURITY:  You are giving a security interest in: 3415 N ODELL AVE, CHICAGO IL 60634
☑ The goods or property being purchased  ☑ Real property you already own.
FILING FEES: $    100.00
LATE CHARGE:  If a payment is more than  15  days late, you will be charged  5.000 % of the payment
PREPAYMENT:  If you pay off early, you
☑ may  ☐ will not  have to pay a penalty.
☑ may  ☐ will not  be entitled to a refund of part of the finance charge.

**EXHIBIT**

F-2

| | * | 1.542 | % | $ | * | 104,523.92 | | $ | * | | 418,613.00 | | $ | * | | 523,136 |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit
PAYMENTS:   Your payment schedule will be:

| | | Monthly Beginning: | | | Monthly Beginning: | |
|---|---|---|---|---|---|---|
| 359 | 1,453.16 | 12/01/2006 | | | | |
| 1 | 1,452.48 | 11/01/2036 | | | | Monthly Beg |

☑ DEMAND FEATURE:  This obligation has a demand feature.
☐ VARIABLE RATE FEATURE:  This loan contains a variable rate feature.  A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | | I want credit life insurance.                                       Signature: |
| Credit Disability | | I want credit disability insurance.                             Signature: |
| Credit Life and Disability | | I want credit life and disability insurance.   Signature: |

INSURANCE:  The following insurance is required to obtain credit:
☐ Credit life insurance   ☐ Credit disability   ☑ Property insurance   ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☑ If you purchase   ☑ property   ☐ flood insurance from creditor you will pay $        600.00   for a one year term.
SECURITY:  You are giving a security interest in: 3415 N ODELL AVE, CHICAGO IL 60634
☑ The goods or property being purchased   ☑ Real property you already own.
FILING FEES: $        100.00
LATE CHARGE:  If a payment is more than        15 days late, you will be charged        5.000 % of the payment
PREPAYMENT:  If you pay off early, you
☑ may   ☐ will not   have to pay a penalty.
☑ may   ☐ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION:  Someone buying your property
☐ may   ☐ may, subject to conditions   ☑ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate   ☑ all dates and numerical disclosures except the late payment disclosures are estimates.
* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | |
|---|---|
| _Leilani Sulit_ | 3/15/06 |
| LEILANI SULIT                    (Applicant) | (Date) |

| | |
|---|---|
| | (Applicant)          (Date) |

| | |
|---|---|
| _signature_ | 1/15/06 |
| (Lender) | (Date) |

Calyx Form - til.hp (02/95)

| | |
|---|---|
| | (Applicant)         (Da |

EXHIBIT

F-3

# MORTGAGE LOAN ORIGINATION AGREEMENT

**(Warning to Broker: The content of this form may vary depending upon the state in which it is used.)**

You LEI LANI SULIT                                                                           agree to enter into this Mortgage Loan Origination
Agreement with FIRST CHICAGO MORTGAGE CO.                        as an independent contractor to apply for a
residential mortgage loan from a participating lender with which we from time to time contract upon such
terms and conditions as you may request or a lender may require. You inquired into mortgage financing with
FIRST CHICAGO MORTGAGE CO.                                         on
We are licensed as a "Mortgage Broker" under

## SECTION 1. NATURE OF RELATIONSHIP.     In connection with this mortgage loan:

* We are acting as an independent contractor and not as your agent.

* We will enter into separate independent contractor agreements with various lenders.

* While we seek to assist you in meeting your financial needs, we do not distribute the products
  of all lenders or investors in the market and cannot guarantee the lowest price or best terms
  available in the market.

## SECTION 2. OUR COMPENSATION.     The lenders whose loan products we distribute generally
provide their loan products to us at a wholesale rate.

* The retail price we offer you - your interest rate, total points and fees - will include our
  compensation.

* In some cases, we may be paid all of our compensation by either you or the lender.

* Alternatively, we may be paid a portion of our compensation by both you and the lender. For
  example, in some cases, if you would rather pay a lower interest rate, you may pay higher
  up-front points and fees.

* Also, in some cases, if you would rather pay less up front, you may be able to pay some or all
  of our compensation indirectly through a higher interest rate in which case we will be paid
  directly by the lender.

We also may be paid by the lender based on (i) the value of the Mortgage Loan or related servicing
rights in the market place or (ii) other services, goods or facilities performed or provided by us to the
lender.

By signing below, the mortgage loan originator and mortgage loan applicant(s) acknowledge receipt of
a copy of this signed Agreement.

| MORTGAGE LOAN ORIGINATOR | APPLICANT(S) |
|---|---|
| **FIRST CHICAGO MORTGAGE CO.** <br> Company Name | **LEI LANI SULIT** <br> Applicant Name(s) |
| **6146 N LINCOLN AVE** <br> Address | **3415 N ODELL AVE** <br> Address |
| **Chicago, IL 60659** <br> City, State, Zip | **CHICAGO, IL 60634** <br> City, State, Zip |
| **773-509-9400 / 773-509-9661** <br> Phone/Fax | _Lalei Sulit_   9/13/08 <br> Borrower Signature          Date |
| _signature_                _date_ <br> Broker or Authorized Agent Signature      Date | Co-Borrower Signature |

EXHIBIT

F-4

tabbies'

Calyx Form MLOA

# MORTGAGE BROKERAGE BUSINESS CONTRACT

LEI LANI SULIT

(hereinafter called Borrower), employs _____ **FIRST CHICAGO MORTGAGE CO.** _____
(hereinafter called Business) to obtain a mortgage loan commitment (hereinafter called Commitment) within _____ days from the date hereof and acknowledges that Business cannot make loans or commitments or guarantee acceptance into specific programs, terms or conditions of any loan. However, Business may issue a rate lock-in or commitment on behalf of a lender to the Borrower.

## I. PROPERTY:

Address:   3415 N ODELL AVE
           CHICAGO,   IL 60634

Borrower's estimates of fair market value: $ _____
Borrower's estimates of the balances on any existing mortgage loan: $ _____

## II. TERMS OF LOAN APPLICATION:

Loan Amount: $         424,000          Interest Rate:   1.450   %
Monthly Payment: $    1,453.16

Loan Type:  ☑ First Mortgage        ☐ Second/Junior Mortgage        Loan Term/Due In:   360 months / 36 months

## III. MORTGAGE BROKERAGE FEE

Business, in consideration of the Borrower's agreement to pay a mortgage brokerage fee along with actual costs incurred in connection with this loan, agrees to exert its best efforts to obtain a bona fide mortgage loan commitment in accordance with the terms (or better terms) and conditions set forth herein. The Business and its associates or employees shall be held harmless from any liability resulting from failure to obtain said loan commitment. Borrower hereby agrees to pay the actual costs as estimated herein and Borrower agrees to pay Business a mortgage brokerage fee of $ 4,240 _____ for obtaining the commitment. Additionally, Borrower acknowledges that Business may receive additional compensation from Lender based on the mortgage program and terms Borrower has engaged Business to obtain in securing the commitment and that Business will receive a sum in range of _____ % to _____ % of the total loan amount. This additional compensation, the exact amount of which will be disclosed at the time of closing, is part of the total brokerage fee due Business. In no event will the brokerage fee, additional compensation included, exceed the maximum fee permitted by the applicable state law.

## IV. APPLICATION FEE

An application fee is charged for the initial cost of processing, verifying and preparing your loan package to submit to a lender for commitment, and will be credited against the amount the Borrower owes if closing occurs. This fee is ☑ Refundable ☐ Non-refundable ☐ Applicable to your closing costs at the time of the settlement of your loan. Business acknowledges the receipt of $ _____ as an Application Fee.

## V. DEPOSIT

Business acknowledge the deposit of $ _____ will be used toward the costs incurred by the Business, or by third party, on behalf of Borrower, to pay expenses necessary to secure the mortgage loan commitment. Actual costs incurred by the Business for items listed on Good Faith Estimate are non-refundable, even if the mortgage loan commitment is not received. In the event of default by the Borrower, Business is authorized to immediately disburse from the deposit all sums then due Business or any third party. The disbursement is not a waiver of any other sums due Business by Borrower, as more fully enumerated herein. Money retained by Business as the deposit shall be returned to the Borrower, within 60 days of disposition of the loan, in accordance with the following:
   (a) the services for which the money is expended are not performed.
   (b) the services for which the money is expended are performed, but there is an excess amount that would be paid as brokerage fee but this commitment is not obtained.

## VI. SERVICES TO BE PROVIDED BY MORTGAGE BROKERAGE BUSINESS

In consideration for Business earning its fee, the services to be provided by Business are: assembling information, compiling files and completing credit application for borrower(s), processing the application file including verifying of information received and ordering vendor reports, preparing and submitting the completed file for conditional loan commitment between borrower(s) and any incidental services necessary to obtain commitment including courier, express mail, photographs, and telephone

_Lei Lani Sulit_            9/15/06        **FIRST CHICAGO MORTGAGE CO.**
Applicant  LEI LANI SULIT        Date        Mortgage Brokerage Business

_____                              License #_____
Applicant                      Date        By _Nancy Maccardi_          9/15/06
alyx Form - mbte.frm (11/98)                   NANCY MACCARDI             Date

Page 1 of ___

┌─────────────────┐
│    **EXHIBIT**   │
│                  │
│      F-5         │
└─────────────────┘

## STANDARDS AND DISCLOSURES

**COMMITMENT:** Brokerage Business hereby agrees to act on behalf of Borrower to secure a mortgage loan commitment. Brokerage Business cannot guarantee acceptance into any particular loan program or promise that any specific loan terms or conditions will be obtained. Receipt of a mortgage loan commitment by Brokerage Business satisfies Brokerage Businesses obligation under the Mortgage Brokerage Business Contract and Good Faith Estimate of Borrower's Costs and the terms of this contract are deemed fulfilled upon receipt of the mortgage loan commitment. Brokerage Business cannot make a mortgage loan or a Mortgage Loan Commitment. A Commitment may, however, be passed through to the Borrower if received from a lender. The term "Commitment" shall mean a written or oral Commitment received by the Brokerage Business, unless otherwise agreed in writing between Brokerage Business and Borrower. Upon demand by the Borrower, the Brokerage Business shall produce for the Borrower's inspection evidence of the mortgage loan commitment.

**AGENCY; NON-LIABILITY FOR LENDER'S ACTS:** Borrower acknowledges that Brokerage Business is acting as an 'agent' on behalf of the Borrower in securing a mortgage commitment pursuant to this Agreement. Borrower acknowledges that Brokerage Business shall not be responsible for any errors of the Lender or Investor nor for any term or condition of the loan documentation that may be contrary to any or federal law. Brokerage Business shall not be responsible for any nonperformance of a commitment or mortgage by any Lender or Investor.

**LITIGATION:** In the event of any litigation arising out of this Agreement, Brokerage Business shall be entitled to all costs incurred, including attorney's fees, whether before trial, at trial, on appeal, or in any other administrative or quasi-judicial proceedings.

**ADDITIONAL CLAUSES:** If not precluded by the provisions of this Agreement, any loan commitment and loan obtained by Brokerage Business may contain such additional clauses or provisions as the Lender may request including but not limited to, nonassumable clauses, late fee clauses and prepayment penalties.

**TIME FOR PAYMENT:** Unless otherwise agreed between Brokerage Business and Borrower, the mortgage brokerage fee shall be due and payable in full upon delivery to the Borrower of mortgage loan commitment from the Lender or Investor, or may be paid at closing, if agreed to by Brokerage Business.

**DECISION:** In applying for this loan, Borrower acknowledges that Borrower has reviewed his personal and financial situation and that it is in Borrower's best interest to proceed with the loan. Borrower further acknowledges that Borrower has not relied on the advice of the Mortgage Brokerage Business or its colleagues as to wisdom of doing so.

**GOOD FAITH ESTIMATE OF COSTS:** The estimated costs stated may be expressed as a range of possible costs and can be charged only when such costs have actually been incurred in connection with securing the loan or loan commitment. Actual costs incurred for items which include, but are not limited to, express mail fees, long distance calls and photographs will be paid by Borrower unless otherwise stated herein.

**TITLE:** Borrower represents and warrants that he is the fee simple title holder to the property described in this Agreement and there are no liens, judgements, unpaid taxes or mortgages which will effect title to the property except

Borrower agrees to pay all costs necessary to clear any defect if status of the title differs from the representation made herein .

**DEFAULT:** If commitment is secured and title is not found to be good, marketable and insurable by the attorney or title company acting for the lender, or the Borrower refuses to execute and deliver the documents required by the lender, or in any other way fails to comply with this Agreement, or if for any reason the loan referred to herein cannot be closed through no fault of the Brokerage Business, Borrower acknowledges that the full brokerage fee has been earned by Brokerage Business and agrees to immediately pay same plus any and all costs incurred on Borrower's behalf.

**DISCLOSURE:** Borrower acknowledges that Brokerage Business has advised him any existing business relationship Brokerage Business has with any vendor. Borrower also acknowledges that Lender may require certain preapproved vendors be used exclusively for services required by this agreement. Brokerage Business has no business relationship with any vendor except as may be listed on attached Provider Relationship form.

**SEVERABILITY OF CLAUSES CONTAINED HEREIN:** In the event that any part or portion of this Agreement is held invalid or unlawful through any administrative, quasi-judicial, or judicial proceeding, the invalidity or illegality thereof shall not effect the validity of this Agreement as a whole and the other provisions and terms contained herein shall remain in full the illegal or invalid provision had been eliminated.

Applicant   **LEI LANI SULIT**                                      Date            Applicant

Calyx Form - mbbz2.frm (11/98)                                   Page 2 of 2

**EXHIBIT**

F-6

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_Leilani Sulit_
Borrower                                           Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☐ Conventional ☐ USDA/Rural Housing Service | ☑ Other (explain): OPTION ARM | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount $ 424,000 | Interest Rate 1.450 % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☑ ARM (type): 1 MONTH MTA |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 3415 N ODELL AVE, CHICAGO, IL 60634     County: Cook | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) PER TITLE | Year Built 1950 |

| Purpose of Loan | ☐ Purchase ☐ Construction ☑ Refinance ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| | $ | $ | | Cost: $ |

| Title will be held in what Name(s) LEILANI SULIT | Manner in which Title will be held SOLELY | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Other Type of Down Payment | | |

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | Borrower's Name: LEILANI SULIT | Co-Borrower's Name: |

| | Borrower | | | | Co-Borrower | | | |
|---|---|---|---|---|---|---|---|---|
| Social Security Number | 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 | Home Phone (incl. area code) 773-736-9175 | DOB (mm/dd/yyyy) 07/20/1948 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |

| ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no.   ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 19 No. Yrs. 3415 N ODELL AVE CHICAGO, IL 60634 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp1.frm 09/05

Page 1 of 5

Borrower _LS_
Co-Borrower _____

**EXHIBIT**

F-7

| Borrower | | IV. EMPLOYMENT INFORMATION | | Co-Borrower | | |
|---|---|---|---|---|---|---|
| Name & Address of Employer | ☑ Self Employed | Yrs. on this job | | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
| ABBY ST. CLAIRS | | 10 yr(s) 1 mth(s | | | | |
| 3415 N. ODELL AVE. | | Yrs. employed in this line of work/profession | | | | Yrs. employed in this line of work/profession |
| Chicago, IL 60634 | | 10 | | | | |
| Position/Title/Type of Business | | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| OWNER HOME HEALTH CARE AGENY | | 773-836-9306 | | | | |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 30,300.00 | $ | $ 30,300.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,489.00 | $ 1,453.16 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | 50.00 |
| Net Rental Income | | | | Mortgage Insurance | | 229.00 |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 30,300.00 | $ | $ 30,300.00 | Total | $ 2,489.00 | $ 1,732.16 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income | *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | |
|---|---|---|
| B/C | | Monthly Amount |
| | | |

Borrower　_is_
Co-Borrower

**EXHIBIT**

tabbies

F-8

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed [ ] Jointly [✓] Not Jointly

| ASSETS Description | Cash or Market Value | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | | |
| | | | **LIABILITIES** | **Monthly Payment & Months Left to Pay** | **Unpaid Balance** |
| *List checking and savings accounts below* | | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union WASHINGTON MUTUAL | | | AMERICAN HM 10440 LITTLE PATUXENT PARKWAY  P.O. BOX 905 COLUMBIA, MD 21044-3561 (OAK PARK AVE) | | |
| | | | Acct. no. 1000674061 | (2,733) | 366,359 |
| Acct. no. 3126307616 | $  22,617 | | Name and address of Company WSBNGTN MUTL 9451 CORBIN AVENUE NORTHRIDGE, CA 91328 ( 10 E ONTARIO | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union LASALLE | | | | | |
| | | | Acct. no. 9083062275981 | (1,328) | 359,360 |
| Acct. no. 845078 | $  9,325 | | Name and address of Company AMERICAN HM 10440 LITTLE PATUXENT PARKWAY  P.O. BOX 905 COLUMBIA, MD 21044-3561(7441 ROGERS AV) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | Acct. no. 1001224907 | (1,500) | 356,000 |
| Acct. no. | $ | | Name and address of Company WF HME MRTG 3476 STATEVIEW BLVD FORT MILL, SC 29715 (ODELL PROPERTY PRIMARY) | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | | |
| | | | Acct. no. 7080197198666 | *(2,489) | 245,166 |
| | | | Name and address of Company US DEPT ED PO BOX 7202 UTICA, NY 13504-7202 | $ Payment/Months | $ |
| Life insurance net cash value Face amount: $ | $ | | | | |
| Subtotal Liquid Assets | $  31,942 | | Acct. no. 3225898522 | 153 | 16,069 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,890,000 | | Name and address of Company CHASE 201 N WALNUT STREET      MAILSTOP DE1-1027 WILMINGTON, DE 19801 | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | Acct. no. 4266880040109387 | 202 | 10,142 |
| Automobiles owned (make and year) | $ | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) AG EDWARDS ACCOUNT | $  337,000 | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | | **Total Monthly Payments** | $  821 | |
| **Total Assets a.** | $ 2,258,942 | | Net Worth (a minus b) $  886,607 | **Total Liabilities b.** | $ 1,372,335 |

### Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 3315 N. OAK PARK CHICAGO, IL 60634 | American Home SFR | $ 450,000 | $ 395,980 | $ | $  2,732 | $  366 | $ |
| 3415 N. ODELL CHICAGO, IL 60634 R | Wells Fargo SFR | 475,000 | 245,166 | 2,905 | 2,489 | 291 | -2,780 |
| 7441 N. ROGERS AVE. CHICAGO, IL 60626 R | American Home Mortgage SFR | 465,000 | 366,359 | 2,100 | 1,500 | 575 | -2,075 |
| * See page 5 for the additional properties Totals | | $1,890,000 | $ 1,366,865 | $ 7,634 | $ 8,049 | $ 1,232 | $ -6,183 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Borrower _____

Co-Borrower _____

**EXHIBIT**

F-9

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 245,166.00 |
| e. Estimated prepaid items | 299.47 |
| f. Estimated closing costs | 508.25 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 245,973.72 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 424,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 424,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -178,026.28 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|:---:|:---:|:---:|:---:|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |

(This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.)

| | Borrower | | Co-Borrower | |
|---|:---:|:---:|:---:|:---:|
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date 9/5/06 | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☑ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: | ☑ Female  ☐ Male | Sex: | ☐ Female  ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) NANCY LICCARDI | Name and Address of Interviewer's Employer FIRST CHICAGO MORTGAGE CO. |
|---|---|---|
| ☑ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Signature  Date 9-15-06  Interviewer's Phone Number (incl. area code) 773-509-9400 | 6146 N LINCOLN AVE Chicago, IL 60659 (P) 773-509-9400 (F) 773-509-9661 |

Fannie Mae Form 1003  07/05
CALYX Form Loanapp4.frm 09/05

Page 4 of 5

**EXHIBIT**

F-10

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: LEILANI SULIT | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE 201 N. WALNUT STREET WILMINGTON, DE 19801 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 5491043360373497 | 194 | 9,745 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE 201 N WALNUT STREET          MAILSTOP DE1-1027 WILMINGTON, DE 19801 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 4147202011814140 | 130 | 6,500 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HSBC/MICRO P O BOX 703 WOOD DALE, IL 60191 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 2236011100172705 | 97 | 1,948 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company THD/CBUSA CCS GRAY OPS CENTER          541 SID MARTIN RD GRAY, TN 37615 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 6035320034384261 | 19 | 440 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CARECRD/GEMB PO BOX 981439 EL PASO, TX 79998-1439 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 601918183563 | 10 | 270 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HSBC/VLCTY 1405 FOULK ROAD WILMINGTON, DE 19808 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 2446001910100258 | 10 | 206 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DISCOVER FIN PO BOX15316          ATT:CMS/PROD DEVELOP WILMINGTON, DE 19850-5316 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 601100773652 | 6 | 130 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X *Leilani Sulit* | Date 3/15/04 | Co-Borrower's Signature: X |
|---|---|---|

Fannie Mae Form 1003   07/05
CALYX Form 1003 Lnap5ast.frm 9/05

**EXHIBIT**

F-11

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: LEILANI SULIT | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

## VI. ASSETS AND LIABILITES

### Schedule of Real Estate Owned

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10 East Ontario Unit 2509 Chicago IL | R | CONDO | WAMU 500,000 | 359,360 | 2,629 | 1,328 | INC | -1,328 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X _Leilani Sulit_ | Date 3/15/06 | Co-Borrower's Signature: X |
|---|---|---|

Fannie Mae Form 1003    07/05
CALYX Form Lnap5reo.frm 09/05

**EXHIBIT**

F-12

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: LEILANI SULIT | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *Leilani Sulit* | 3/15/06 | X | |

Freddie Mac Form 65    07/05
CALYX Form Lnap5cnt.frm 09/05

Page 5 of 5

EXHIBIT

tabbies®

F-13

# PRE-PAYMENT PENALTY DISCLOSURE
## (MUST BE COMPLETED AT APPLICATION)

_LEILANI SULIT_

**Borrower**

_5413 W ODELL AVE. CHICAGO IL 60639_

**Borrower**

**Property address, City, St, Zip**

## To the borrower(s) :

The loan in the amount of $ _424,000_ that you have applied for:

**X**  **Contains a pre-payment penalty with the following terms:** (disclose the amount and term of the pre-payment penalty as will be included in the mortgage, deed of trust or any amendments or riders to such.)

_____  This loan does not contain a pre-payment penalty

**Understanding and approval of the borrower:**

**X** I (we) have read and understand that the loan will contain a prepayment penalty and accept the terms as stated.

_____ I (we) have read and understand that the loan does not contain a prepayment penalty.

_____ I (we) do not want a loan that has a prepayment penalty.

_Leilani Sulit_  9/15/06

**Borrower**            **Date**    **Borrower**                              **Date**

Licensee (company) _FIRST CHICAGO MORTGAGE_

_Nancy Ricciardi_                                                    _9-15-06_

**Signature of loan officer or authorized representative of the Licensee**                    **Date**

**EXHIBIT**

F-14



## A. SETTLEMENT STATEMENT

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

**B. Type of Loan**

| 1. __ FHA | 2. __ RHS | 3. _X_ Conv Unins | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. __ VA | 5. __ Conv Ins | | 06-1480 | 000506580-0 | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (P.O.C.) were paid outside the closing, they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| LEILANI I. SULIT<br><br>3415 N. ODELL AVE.<br>CHICAGO, IL 60634 | | BANK UNITED, FSB<br><br>7815 NW 148 STREET<br>MIAMI LAKES, FL 33016 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 3415 N. ODELL AVE.<br>CHICAGO, IL 60634 | CAMBRIDGE TITLE COMPANY | |
| | Place of Settlement<br>400 CENTRAL AVENUE<br>NORTHFIELD, IL 60093 | I. Settlement Date<br>10/17/06<br>DD: 10/23/06 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 8,456.74 | 403. | |
| 104. PAYOFF WELLS FARGO HOME MORTGAGE | 244,033.36 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 252,490.10 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. Amounts Paid By or in Behalf of Borrower** | | **500. Reductions in Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 424,000.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 424,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. Cash At Settlement From or To Borrower** | | **600. Cash At Settlement To or From Seller** | |
| 301. Gross amount due from borrower (line 120) | 252,490.10 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 424,000.00 | 602. Less reduction amount due seller (line 520) | |
| 303. CASH    TO    BORROWER | 171,509.90 | 603. CASH    TO    SELLER | 0.00 |

**EXHIBIT**

tabbies®

G-1

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT      SETTLEMENT STATEMENT      PAGE 2

FILE #: 06-1480

| L. SETTLEMENT CHARGES: | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | @ % | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | P.O.C. | | |
| 801. Loan Origination Fee | % | | |
| 802. Loan Discount | % | | |
| 803. Appraisal Fee | to  FIRST CHICAGO | 225.00 | |
| 804. Credit Report | to | | |
| 805. Lender's Inspection Fee | to | | |
| 806. Mtg Ins Application Fee | to | | |
| 807. | to | | |
| 808. UNDERWRITING FEE | BANK UNITED, FSB | 288.00 | |
| 809. PROCESSING FEE | FIRST CHICAGO | 728.00 | |
| 810. YSP PAID BY BANKUNITED, FSB | $14840 POC TO FIRST CHICAGO | | |
| 811. MORTGAGE BROKER FEE | FIRST CHICAGO | 4,240.00 | |
| 812. DOCUMENT PREPARATION | BANK UNITED, FSB | 250.00 | |
| 813. FLOOD CERTIFICATION | FIRST AMERICAN FLOOD DATA SERVICES | 14.00 | |
| 814. TAX SERVICE FEE | FCIS | 62.00 | |
| 815. WIRE FEE | BANK UNITED, FSB | 30.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from  10/23/06  to  11/01/06  @ $  94.2222  /day  9  Days | | 848.00 | |
| 902. Mortgage Insurance Premium for | to | | |
| 903. Hazard Insurance Premium for | yrs  to $864.34 POC TO ALLSTATE | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance | 5  mo.@$  72.03  /mo. | 360.15 | |
| 1002. Mortgage Insurance | mo.@$  /mo. | | |
| 1003. City property taxes | mo.@$  /mo. | | |
| 1004. County property taxes | 4  mo.@$  232.91  /mo. | 931.64 | |
| 1005. Annual Assessments | mo.@$  /mo. | | |
| 1006. | mo.@$  /mo. | | |
| 1007. | mo.@$  /mo. | | |
| 1008. AGGREGATE ADJUSTMENT | | -72.05 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee | to | | |
| 1102. Abstract or title search | to | | |
| 1103. Title examination | to | | |
| 1104. Title insurance binder | to | | |
| 1105. Document preparation | to | | |
| 1106. Notary fees | to | | |
| 1107. Attorney's fees | to | | |
| (includes above items No: | ) | | |
| 1108. Title Insurance | to  CAMBRIDGE TITLE COMPANY | 550.00 | |
| (includes above items No: | ) | | |
| 1109. Lender's coverage $ | 487,600.00 ---- 550.00 | | |
| 1110. Owner's coverage $ | | | |
| 1111 EPA ENDORSEMENT | | | |
| 1112. 6.2 NEG ARM ENDORSEMENT | | | |
| 1113. ALTA 8.1 & ALTA 9 ENDORSEMENT | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees | Deed $  Mortgage $  Releases $ 0.00 | | |
| 1202. City/county/stamps | Deed $  Mortgage $ | | |
| 1203. State tax/stamps | Deed $  Mortgage $ | | |
| 1204. | | | |
| 1205. ASSIGNMENT OF MORTGAGE RECORDING FEE | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | | |
| 1303. RENTAL HOUSING SURCHARGE | COOK COUNTY RECORDER | 10.00 | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| **1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K)** | | 8,455.74 | 0.00 |

EXHIBIT

G-2

# INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

Date: **October 17, 2006**

BORROWER(S) NAME AND ADDRESS

**LEILANI I. SULIT**
**3415 NORTH ODELL AVENUE**
**CHICAGO, IL 60634**

LENDER / SERVICER NAME AND ADDRESS

**BANKUNITED, FSB**
**CORPORATION**
**7815 NW 148 STREET**
**MIAMI LAKES, FL 33016**

TOLL FREE NO.

MORTGAGE INSURANCE / CASE NUMBER

LOAN NO.
**000506580-0**

[ ] Your [ ] monthly [ ] biweekly mortgage payment for the coming year will be $ _____ of which
$ _____ will be for principal and interest $ _____ will go into your escrow account, and $ _____
will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment.

[X] Your first [X] monthly [ ] biweekly mortgage payment for the coming year will be $1,707.99 of which
$1,403.05 will be for principal and interest $304.94 will go into your escrow account, and $ _____
will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment.
The terms of your loan may result in changes to the principal and interest payments during the year.

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.

| MONTH/ PAYMENT NO. | PAYMENTS TO ESCROW ACCT. | PAYMENTS FROM ESCROW ACCT. | DESCRIPTION | ESCROW ACCT. BALANCE |
|---|---|---|---|---|
| Starting balance: | | | $ | 1,219.74 |
| 12/01/2006 | 304.94 | | | 1,524.68 |
| 01/01/2007 | 304.94 | | | 1,829.62 |
| 02/01/2007 | 304.94 | | | 2,134.56 |
| 03/01/2007 | 304.94 | 1,917.40 Home Ins(1,917.40) | | 522.10 |
| 04/01/2007 | 304.94 | | | 1,346.98 |
| 05/01/2007 | 304.94 | | | 1,151.92 |
| 06/01/2007 | 304.94 | | | 1,966.86 |
| 07/01/2007 | 304.94 | | | 2,251.80 |
| 08/01/2007 | 304.94 | 864.34 Haz Ins(864.34) | | 1,702.40 |
| 09/01/2007 | 304.94 | 1,917.40 Home Ins(1,917.40) | | 089.94 |
| 10/01/2007 | 304.94 | | | 914.82 |
| 11/01/2007 | 304.94 | | | 1,219.76 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)*

Cushion selected by servicer: $ 609.88

(Signatures are optional.) By signing below, borrower acknowledges

*This is my real signature*

Borrower LEILANI . SULIT        10-17-06        Date        Borrower        Date

Borrower        Date        Borrower        Date

© 1993 Harland Financial Solutions, Inc.
ITEM 7167L0 (9403)

GreatDocs™
To Order Call: 1-800-968-5775

**EXHIBIT**

G-3

This instrument was prepared by:

Name: KIM C. NIEKRASZ

Address:

BANKUNITED, FSB
1900 E. GOLF ROAD, SUITE 1200,
SCHAUMBURG, IL 60173

After Recording Return To:
BANKUNITED, FSB
ATTN: POST CLOSING
7815 NW 148 STREET
MIAMI LAKES, FL 33016

Doc#:  0630549130 Fee: $52.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 11/01/2006 01:21 PM  Pg: 1 of 15

06 -1480

——— [Space Above This Line For Recording Data] ———

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated **October 17, 2006**                      , together with all Riders to this document.

(B)  "Borrower" is **PATRICIO I. SULIT AND LEILANI I SULIT, HUSBAND AND WIFE**

Borrower is the mortgagor under this Security Instrument.

(C)  "Lender" is **BankUnited, FSB**

Lender is a **CORPORATION**                                     organized and existing under the laws of **UNITED STATES OF AMERICA**                      . Lender's address is **7815 NW 148 STREET, MIAMI LAKES, Florida  33016**

. Lender is the mortgagee under this Security Instrument.

(D)  "Note" means the promissory note signed by Borrower and dated  **October 17, 2006**                . The Note states that Borrower owes Lender **Four Hundred Twenty Four Thousand and no/100**

Dollars (U.S. $ **424,000.00** ————                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 01, 2036** .

(E)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider      [ ] Condominium Rider            [ ] Second Home Rider

[ ] Balloon Rider             [ ] Planned Unit Development Rider    [X] Other(s) [specify]  **LEGAL DESCRIPTION**

[ ] 1-4 Family Rider          [ ] Biweekly Payment Rider

(H)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

ILLINOIS—Single Family– Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3014 1/01
ITEM 1876L1 (0011)                        (Page 1 of 11 pages)                GREATLAND ■
                                                            To Order Call: 1-800-530-9393□ Fax: 616-791-1131
MFIL3112

0005065H0-0

CAMBRIDGE TITLE COMPANY
400 Central Avenue
Northfield, IL 60093

EXHIBIT

H-1

(I)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)  "**Escrow Items**" means those items that are described in Section 3.

(L)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the         **COUNTY**              of              **COOK**
                                        [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

**SEE ATTACHED LEGAL DESCRIPTION MADE A PART HERETO.**

**PIN#12-24-413-038-0000**

which currently has the address of          **3415 NORTH ODELL AVENUE**
                                                        [Street]

**CHICAGO**              , Illinois          **60634**              ("Property Address"):
[City]                                        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                        Form 3014 1/01
ITEM 1876L2 (0011)                              (Page 2 of 11 pages)                              GREATLAND ■
                                                                                    530-9593  Fax: 616-791-1131
MFIL3112

EXHIBIT

tabbies®  H-2

000506580-0

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1876L3 (0011)    *(Page 3 of 11 pages)*

MFIL3112

Form 3014 1/01
GREATLAND ■
To Order Call: 1-800-530-9393  Fax: 616-791-1131

000506580-0

**EXHIBIT**

H-3

fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was

ILLINOIS—Single Family– Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3014 1/01

**EXHIBIT**

**H-4**

previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**EXHIBIT**

tabbies®

H–5

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

ILLINOIS—Single Family —Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3014 1/01

ITEM 1876LG (0011)                    *(Page 6 of 11 pages)*                    GREATLAND ■
                                                                   To Order Call: 1-800-530-9393 ˙ Fax: 616-791-1131
MFIL3112                                                                          000506580-0

**EXHIBIT**

tabbies

H-6

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

---

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1876L7 (0011)

MFIL3112

*(Page 7 of 11 pages)*

Form 3014 1/01

GREATLAND ■
er Call: 1-800-530-9393  Fax: 616-791-1131

**EXHIBIT**

babbies'

**H-7**

000506580-0

**13.   Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.   Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.   Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.   Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.   Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.   Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require

ILLINOIS—Single Family —Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1876L8 (0011)

MFIL3112

*(Page 8 of 11 pages)*

Form 3014 1/01

GREATLAND ■
Call: 1-800-530-9393  Fax: 616-791-1131

000506580-0

**EXHIBIT**

tabbies

**H-8**

immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.  Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3014 1/01

ITEM 1876L9 (0011)

(Page 9 of 11 pages)

GREATLAND ■
To Order Call: 1-800-530-9393 | Fax: 616-791-1131

MFIL3112

000506530-0

**EXHIBIT**

tabbies

H-9

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

EXHIBIT
H-10

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 11 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
**LEILANI I. SULIT**                   -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
PATRICIO I. SULIT                    -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
                                     -Borrower                                              -Borrower

Witness:                                        Witness:

_____                _____

State of Illinois _ILLINOIS_
County of _COOK_

This instrument was acknowledged before me on _October 12th, 2006_

(date) by

_LEILANI I SULIT_
_PATRICIO I SULIT_

(name[s] of person[s]).

_____
Notary Public

Not signed
in front of a
Notary

OFFICIAL SEAL
LUNA C RADIO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 08/27/2009

ITEM 1876L11 (0011)                NSTRUMENT                          Form 3014 1/01
                                   (rage 11 of 11 pages)              GREATLAND ■
MFIL3112                                                             Call: 1-800-530-9393 □ Fax: 616-791-1131

                                                                     000506580-0

**EXHIBIT**

H-11

Commitment No.: 06-1480

# EXHIBIT A

## LEGAL DESCRIPTION

LOT 70 (EXCEPT THE NORTH 82 FEET THEREOF) IN COLLINS AND GAUNLETT'S FIRST GARDENS SUBDIVISION IN THE EAST 1/2 OF FRACTIONAL SECTION 24, TOWNSHIP 40 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly known as: 3415 N. ODELL AVE., CHICAGO, IL 60634

Permanent Index No.: 12-24-413-038-0000

**EXHIBIT**

tabbies

H-12

# BankUnited

## Adjustable Rate Rider
### (1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate)
### (1 Month MTA ARM)

THIS ADJUSTABLE RATE RIDER is made this      17th      day of      October 2006

and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note, as modified or amended (the "Note") to BankUnited, FSB

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 3415 NORTH ODELL AVENUE
### CHICAGO, IL  60634

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND THE PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THE NOTE. THE PRINCIPAL BALANCE OF THE NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**"2.     INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      8.0000      %. The interest rate I will pay will change as provided in this Section 2.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Change Dates**
The interest rate I will pay may change on the first day of      December 2006 and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

**(C) Interest Rate Limits**
My interest rate will never be greater than      10.9500      %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.

**(D) Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rate (H.15)." The Twelve-onth Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index, or any substitute Index, is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **Three and 2900/10000**      percentage points (  3.2900    %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.

In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 1 of 3                                    Initials

**EXHIBIT**

**H-13**

**(A)  Time and Place of Payments**

I will make my monthly payments on the first day of every month, beginning on    December 2006 . I will make a payment every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on November 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make monthly payments at  7815 NW 148 ST., MIAMI LAKES, FL  33016

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payment**

My initial monthly payment will be in the amount of U.S. $ 1,403.05 . My initial monthly payment was calculated using a rate of 1.2000       %, the original Principal, and the Maturity Date. This rate is lower than the initial interest rate stated in Section 2(A) above.

The amount of my initial monthly payment will change as provided in this Section 3.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on December 1, 2007 and on that same day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date."  My monthly payment will also change as provided under Section 3(F) below.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my monthly payments are changed earlier as provided in Section 3(F) below.

**(D)  Calculation of Monthly Payment Changes; Limitations**

On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date.  However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date.  The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

**(E)  Changes in My Unpaid Principal**

My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note.  In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time.  For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time.  For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that 115% limitation on a monthly payment due date, I will begin paying a new monthly payment on that due date, and will continue to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation.  The new monthly payment will be the amount that would be sufficient to repay my then unpaid Principal, together with interest at the rate in effect during the month prior to the payment due date, in full in substantially equal monthly installments through the Maturity Date.  The new monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

**(G)  Required Full Monthly Payment**

On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

**4.      NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice."

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read, in its entirety, as follows:

"**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

MFCD5084
Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate Monthly Rate Change

9009405494

Page 2 of 3                                                        Initials: 

EXHIBIT

tabbies

H-14

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
LEILANI I. SULIT                 -Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
PATRICIO I. SULIT                -Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
                                 -Borrower                                    -Borrower

[Sign Original Only]

EXHIBIT

H-15